**UNITED STATES of America**

v.

**Samuel GRAVINA.**

**Crim. No. 93–10336.**

United States District Court,
D. Massachusetts.

Nov. 6, 1995.

---

Bernard Grossberg, Boston, MA, for Samuel Gravina.

Mark W. Pearlstein, United States Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM

YOUNG, District Judge.

This matter came before the Court when the government sought to revoke the supervised release of Samuel Gravina ("Gravina"), claiming he had committed the following crimes: possession of false identification documents; possession of stolen property; making false statements to obtain a post office box under the name of another; using a false social security number belonging to Luigi Russo; and attempted credit card fraud. The government also claimed that he had failed to notify his probation officer within 72

hours, as required, of his questioning by the state police, and that Gravina had failed to provide certain financial information to probation. Gravina responded by filing a so-called "Motion to Suppress Evidence," asking the Court to exclude from evidence at the revocation hearing all items seized from his van, as well as the alleged fruits of that search. Gravina argued that the warrantless search violated his rights under the Fourth Amendment, and that the search was "pretextual" and constituted harassment. At evidentiary hearings on September 11 and 12, 1995, the Court denied the motion, holding that the exclusionary rule does not apply in these circumstances, and went on to receive evidence from the government and Gravina, revoke Gravina's supervised release, and sentence him to two years imprisonment. This memorandum explains the Court's reasoning undergirding the denial of the motion to suppress.

The issue presented in this criminal proceeding, one of first impression in this circuit, is whether the exclusionary rule, ordinarily invoked to bar the admission of unlawfully seized evidence from the prosecution's case-in-chief at trial, applies with equal force to proceedings instituted by the government to revoke a convicted defendant's supervised release. Most of the other circuits have addressed the issue and all of them, except the Fourth, and to a limited degree, the Second, have held that the rule does not apply and thus that the district court may receive and consider evidence allegedly or actually seized in violation of the Fourth Amendment in determining whether parole, probation, or supervised release should be revoked. For the reasons set forth below, this Court agrees with the majority position and thus held that it need not consider the propriety of the seizure of evidence in this case before revoking the defendant's supervised release based, at least in part, on that evidence.

## I. Background

The defendant has a lengthy record as a small-time confidence man. In December, 1991, he pled guilty to a one-count information charging him with wire fraud in the United States District Court for the District of Nevada. Gravina had fraudulently obtained a total of $40,000 credit at three Las Vegas casinos, and then lost the money gambling. The Nevada Court departed downward from a guideline sentencing range of 12 to 18 months—Gravina had cooperated with the government and assisted the casinos in preventing scam artists like himself from successfully plying their trade—and sentenced him to five years' probation. The Court also ordered that Gravina pay $40,000 in restitution. Supervision of Gravina's case was transferred to this District in September of 1992, and jurisdiction in the matter was transferred here in December of 1993.

Gravina also spent a good deal of time in 1992 before the courts of the Commonwealth of Massachusetts. He pled guilty to larceny charges in Middlesex and Norfolk counties, and received concurrent sentences of two years, with six months to be served and the balance suspended, plus restitution and three years probation. After serving the six months, Gravina failed to make good on his restitution payments and the state court revoked his probation. He served another month and was released in November of 1992 upon payment of his outstanding restitution obligations. His state court-ordered probation was terminated at that time.

The pattern of misconduct continued in 1993. Gravina violated the conditions of probation imposed by the Nevada federal court by attempting to hide his financial assets from the Probation Office to avoid paying the $40,000 restitution, and by traveling to the Bahamas without permission. This Court revoked Gravina's probation on December 12, 1993, and sentenced him to two years' incarceration, to be followed by three years supervised release. Upon full payment of restitution, the Court reduced his sentence to 18 months.

Gravina left prison on April 14, 1995, to begin his term of supervised release. Despite repeated warnings from state and federal judicial officers, Gravina could not help but return to his old ways. He was indicted in Norfolk County Superior Court for welfare fraud in July, and a warrant issued for his arrest. Gravina was soon arrested by the State Police while driving his van. After

impounding the van, the police conducted an alleged inventory search and discovered evidence of other crimes and schemes, including: a birth certificate bearing the name "Luigi Russo," along with a photo identification card with Russo's name and Gravina's picture; blank checks for checking accounts in the names of Luigi Russo and Gilda M. Roffo; a United States Postal Service Form, entitled, "Application For Delivery of Mail Through Agent," listing the name Luigi Russo as applicant; and a credit card application in the name of Luigi Russo.

## II. Discussion

■ The Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have refused to exclude allegedly wrongfully seized evidence in determining whether a defendant's parole, probation, or supervised release should be revoked.[1] *See United States v. Finney*, 897 F.2d 1047, 1048 n. 3 (10th Cir.1990) (citing cases). Most of the circuits provide an exception that such evidence is inadmissible where the defendant is the victim of harassment. *See, e.g., United States v. Montez*, 952 F.2d 854, 857 (5th Cir.1992); *United States v. Farmer*, 512 F.2d 160, 162 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975). The Second Circuit has taken another tack, applying the exclusionary rule where a probation officer is aware of the status of the target of the search, *United States v. Rea*, 678 F.2d 382, 388 (2d Cir.1982), but not where a police officer is unaware that the target of the search is a probationer, *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1162–63 (2d Cir.1970). The Fourth Circuit stands alone on the other side of the debate, holding that "evidence obtained by unconstitutional searches of a probationer's property is inadmissible in a federal probation revocation

hearing." *United States v. Workman*, 585 F.2d 1205, 1211 (4th Cir.1978).

■ As this is well-trod ground, extensive analysis is unnecessary. The Court agrees with the majority position that the crucial goals of supervised release and probation—the reintegration into society of its nonconforming members and the protection of the public from criminals—outweigh whatever marginal and speculative deterrent effect the imposition of the exclusionary rule may have. *See Montez*, 952 F.2d at 858–59; *United States v. Winsett*, 518 F.2d 51, 54–55 (9th Cir.1975); *see also United States v. Calandra*, 414 U.S. 338, 347–48, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The revocation determination requires "a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (Burger, C.J.) (parole revocation); *cf. United States v. Lapinski*, 993 F.2d 1531, 1993 WL 138528, at *5 (1st Cir. May 3, 1993) (per curiam) (text available only on Westlaw) (district court need only grant limited right to confront and cross-examine adverse witness at supervised release revocation hearing because "the revocation proceeding is not the equivalent of a criminal prosecution"); *United States v. Portalla*, 985 F.2d 621, 622 (1st Cir.1993) (evidence at revocation hearings need not satisfy tests of admissibility of Federal Rules of Evidence); *United States v. Czajak*, 909 F.2d 20, 22–23 (1st Cir.1990) (whether probationer violated Massachusetts law need not be determined by jury or beyond a reasonable doubt). Such an inquiry may properly include evidence which may not be admissible in the prosecution's case-in-chief at a criminal trial; the Court thus need not determine whether the evidence adduced at the hearing

---

1. As the standards and interests involved are essentially the same in the parole, probation, and supervised release revocation contexts, the reasoning underlying cases concerning the admissibility of evidence in one type of hearing are applicable to the other two as well. *See United States v. Frazier*, 26 F.3d 110, 112–14 (11th Cir. 1994) (supervised release comparable to probation and parole in determining applicability of Federal Rules of Evidence); *United States v.*

*Blackshear*, 1 F.3d 1242, 1993 WL 288297 (6th Cir. July 29, 1993) (per curiam), *cert. denied*, —— U.S. ——, 114 S.Ct. 889, 127 L.Ed.2d 83 (1994) (text available only on Westlaw) (there is "no underlying difference between probation revocation hearings and supervised release revocation hearings sufficient to support application of the exclusionary rule in one proceeding but not the other"); *United States v. Montez*, 952 F.2d 854, 858 (5th Cir.1992).

was seized in violation of the Fourth Amendment. Therefore, the Court may, and did, properly consider and rely upon, at least in part, the evidence taken from Gravina's van following his arrest in revoking his supervised release.

■ Latching on to the dicta of many cases, Gravina asserts that he was the subject of police harassment, and thus contends that the exclusionary rule must be applied to deter future misconduct. The harassment exception to the usual inapplicability of the exclusionary rule has often been noted, but rarely defined or successfully invoked. *See Montez,* 952 F.2d at 859 (while "court must carefully review the agents' conduct to determine if harassment was involved, there was clearly none in this case"); *United States v. Wiygul,* 578 F.2d 577, 578 (5th Cir.1978) (per curiam) ("exclusionary rule does not apply to probation revocation hearings absent a demonstration of police harassment of probationers"); *Farmer,* 512 F.2d at 162 ("[t]his case does not involve harassment"); *Sperling,* 426 F.2d at 1164 ("there is always the possibility of harassment ... [which] can be treated as [it] arise[s]"); *United States v. Rushlow,* 385 F.Supp. 795, 797 (S.D.Cal.1974), *aff'd,* 541 F.2d 287 (9th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 502, 50 L.Ed.2d 595 (1976) ("should the facts suggest that a probationer is the object of constant police harassment, the need for deterring such misconduct would justify such an extension of the [exclusionary] rule").

In a very recent case, a federal district court in Texas attempted to set forth parameters to guide the determination whether police conduct amounts to harassment sufficient to invoke the exclusionary rule. *See United States v. James,* 893 F.Supp. 649, 650–51 (E.D.Tx.1995). In that case, the court required that the defendant, to obtain the benefit of the exclusionary rule, demonstrate at his supervised release revocation hearing that he was "targeted for *disparate treatment* by government officials." *Id.* at 650 (emphasis supplied). In holding that there was no harassment, the Court engaged in the following analysis:

Absent other guidance ... the term "harassment" should be evaluated in its plain and ordinary meaning.... [H]arassment is most often a repeated incident—an element of constancy should be present in the type of harassment necessary to invoke the exclusionary rule in this context.... [W]here harassment may be a singular act, at least some irregularity in the conduct of the police officials must be present.... The encounter was not orchestrated in an attempt to badger defendant into committing a violation of his terms of release. Additionally, there is no evidence to suggest this was an ongoing campaign of investigation or "harassment" of defendant.

*Id.* at 651.

This Court is in full accord with the *James* framework. Gravina's argument that the investigation by the police and district attorney—culminating in a police officer conducting surveillance on Gravina and waiting until he took to the road in his van to make the arrest—itself constitutes harassment must fail because it would essentially render persons on probation and supervised release immune from all investigation during the release period. There is no evidence here of a campaign or conspiracy to induce Gravina to violate the terms of his release; to the contrary, all evidence demonstrates that Gravina needed no such prodding. He was not "targeted" by the police as a probationer, but rather became the subject of an investigation and an indictment handed down by the Norfolk County Grand Jury based on his continued inability to obey the law. The police elected to conduct surveillance on Gravina and to place him under arrest while he was driving his van; absent any evidence whatsoever of improper police motivation or conduct, this Court will not second-guess the manner in which the police performed their functions here. "Surveillance in this context does not constitute harassment." *United States v. Giannetta,* 711 F.Supp. 1144, 1154–55 (D.Me.1989); *see also United States v. Giannetta,* 909 F.2d 571, 581 (1st Cir.1990) (related case).[2] Harassment requires far

**2.** In *Giannetta,* the district court held there was no evidence of harassment where a suspicious

probation officer, employing a "pattern of stringent probation and supervision," conducted an

more than has been alleged or proven in this case.

## III. Conclusion

■ The exclusionary rule does not apply to supervised release revocation hearings, absent evidence of police harassment or other misconduct, and does not bar the admission of evidence seized in violation of the Fourth Amendment. The Court therefore properly (1) declined to determine whether certain evidence proffered by the Government in this case had been seized illegally and (2) considered and relied, at least in part, upon the documents seized in deciding that Gravina had violated the terms of his supervised release.

investigation with a police officer resulting in a warrantless search of the probationer's residence. 711 F.Supp. at 1154–55. In a related matter involving the same defendant, the First Circuit held that a probation officer may conduct a warrantless search upon reasonable suspicion and rejected the defendant's contention that the involvement of the police indicated the probation officer's search was pretextual "subterfuge" by the police seeking to avoid the warrant requirement. *Giannetta,* 909 F.2d at 581.