Commonwealth *v.* Simon.

COMMONWEALTH *vs.* JOHN D. SIMON.

No. 00-P-1609.

Suffolk. February 7, 2002. - January 15, 2003.

Present: GELINAS, CYPHER, & KANTROWITZ, JJ.

*Practice, Criminal,* Revocation of probation, Admissions and confessions, Voluntariness of statement. *Due Process of Law,* Probation revocation. *Constitutional Law,* Admissions and confessions. *Intoxication. Evidence,* Corroborative evidence, Declaration against interest.

Error, if any, arising from a probation revocation hearing in which the written notice of surrender did not specifically state the charge upon which the judge ultimately based the revocation (i.e., the defendant's operation of a motor vehicle under a suspended license) was harmless, where the defendant's admission to such conduct was included in the police reports that were generated in relation to the charges that were listed on the notice, and where defense counsel addressed the issue of the defendant's conduct at the inception of the hearing and vigorously cross-examined the Commonwealth's witness about the defendant's admission to such conduct. [84-86]

A criminal defendant failed to demonstrate that his admission to police that he had operated a motor vehicle under a suspended license was inadmissible at a probation revocation hearing, whether on the basis that it was made prior to his being given Miranda warnings [86-87], on the basis that his intoxication rendered the admission involuntary [87-90], or on the basis that the admission, which constituted a statement against penal interest and was corroborated by other evidence, was insufficiently reliable [90-92].

COMPLAINT received and sworn to in the Brighton Division of the District Court Department on October 12, 1999.

A proceeding for revocation of probation was heard by *R. Peter Anderson,* J.

*Esther J. Horwich* for the defendant.

*Jeremy C. Bucci,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant appeals from the revocation of his probation, based on evidence that he was operating a motor

vehicle under a suspended license. Probation had been imposed on November 16, 1999, in Brighton District Court, after the defendant admitted to sufficient facts to warrant a finding of guilty on a charge of operating a motor vehicle under a suspended license. The judge continued the case without a finding and placed the defendant under the supervision of a probation officer on terms that, among others, required that he "obey all court orders and local, [S]tate and [F]ederal laws" until May 19, 2000.

On January 2, 2000, the defendant was stopped by the Mashpee police on his way home from a football game. The stop resulted in new charges being lodged against the defendant in Falmouth District Court for operating a motor vehicle while under the influence of alcohol and operating a motor vehicle under a suspended license. The new offense triggered the issuance of a written notice of a probation violation from the Brighton District Court, stating the defendant was not in compliance with the terms of his probation because of the new complaint.

After a hearing on March 3, 2000, the judge found that the defendant had violated the terms of his probation on the basis of his admission to the Mashpee police during his arrest that he had driven his car earlier in the day. The judge entered a guilty finding,[1] and modified the terms of probation by extending the probationary period to one year from the date of the hearing and imposing a suspended, ten-day house of correction sentence.[2]

On appeal, the defendant argues that the entry of a guilty finding and the order modifying the terms of his probation should be reversed because (1) the grounds stated as the reason for revoking his probation were different from those for which he had received written notification; (2) the defendant's admis-

---

[1]See, e.g., *Commonwealth* v. *Villalobos*, 437 Mass. 797, 800-801 (2002) (where defendant admits to sufficient facts, judge continues case without a finding, and defendant then fails to meet any conditions attached to the continuance, he may be found guilty and sentenced).

[2]In accordance with Rule 9 of the District Court Rules for Probation Violation Proceedings (West 2001), the proceedings, which resulted in the imposition of a guilty finding and the revocation of straight probation, were properly handled pursuant to the procedures applicable to a probation revocation. See generally *Commonwealth* v. *Maggio*, 414 Mass. 193, 195-196 (1993).

sion was unreliable, because the police officer who testified was unsure of the exact statement, and because it was contradicted by other information contained in the police reports; (3) the admission was insufficient, as a matter of law, to support a finding that he had violated the law, because it was uncorroborated; and (4) his admission was not the product of voluntary actions, because at the time of the admission he was intoxicated, and prior to his admission he had not been given his Miranda warnings. We affirm the revocation decision.

We summarize the relevant facts as presented at the revocation hearing. On January 2, 2000, Officer Jon Read of the Mashpee police department was traveling northbound on Route 130. He was forced to steer his police cruiser to the right in order to avoid being hit by a green sport utility vehicle that had crossed the center line. Read testified at the hearing that he was unable to see who was driving or how many people were in the vehicle. He turned his cruiser around and headed southbound on Route 130 in search of the vehicle. Read found it parked at the side of the road. Read observed the defendant standing toward the back of the vehicle, on the driver's side.

Read stopped, got out, and walked toward the defendant. As Read approached, the defendant walked to the passenger side of the vehicle, sat in the passenger seat, and began to look through the glove box. Read asked the defendant where the driver was; the defendant did not respond.[3] At about that time, another individual, Kevin Crosby, the defendant's son-in-law, emerged from the woods by the side of the road, where he apparently had been urinating. Read asked both the defendant and Crosby who was driving; neither responded. Read observed food and a cooler with numerous beers in it in the rear of the vehicle. Read determined that the defendant was the owner of the vehicle.

Read determined that both the defendant and Crosby were under the influence of alcohol, and placed both in protective custody. Officer Paul Coronella was called and arrived at the scene. The defendant was placed in the rear of Coronella's police car and Crosby was placed in the rear of Read's police

---

[3]We look to the testimony given by Officer Read at the surrender hearing. Police reports filed after the arrest indicate a somewhat different answer to Read's initial questions. Any variance is not material to our decision.

car, both for transportation to the police station. En route to the station, Crosby had a conversation with Read in which Crosby stated that the defendant was the driver. When Read arrived at the station with Crosby, he informed Coronella that Crosby had implicated the defendant as the driver. Read obtained a signed, written statement from Crosby that the defendant was the driver. After conducting sobriety tests, which he said the defendant failed, Coronella placed the defendant under arrest for operating the motor vehicle on Route 130 while under the influence of intoxicating liquor. A breathalyzer test revealed the defendant to have a blood alcohol reading of .16. Officer Sean Sullivan, who had been called to inventory the contents of the defendant's vehicle at the scene, stated in his report that, at the station, he noticed that both the defendant and Crosby "exhibited extreme symptoms of intoxication."

Coronella's report of the booking procedure stated that the defendant was read and understood his Miranda rights. Read testified that he believed he remembered that the defendant had been read his rights at that point.

According to both Coronella's and Read's reports, after the booking procedure, the defendant was again asked how he had arrived at the football game that day. Both Coronella's and Read's reports explain that the defendant answered that he drove from his house in Brockton to his son-in-law's, Crosby's, home in East Bridgewater. Crosby then drove the defendant's vehicle to the game. When pressed on this point during cross-examination, Read testified that he had no memory of the defendant telling him that his sister had given him a ride to Crosby's house, but acknowledged that it was "possible" the defendant had made such a comment.

The judge did not credit Crosby's statement, as related by Officer Read, that the defendant had been driving the vehicle at the time it was stopped. Rather, the judge credited the defendant's admission, as reported by Coronella and Read, that he had driven from his house to Crosby's house, the first leg of the trip to the football game.[4]

---

[4]At the conclusion of the hearing, the judge unequivocally stated that he did not credit Crosby's statement. In his written findings, the judge noted that he

On these facts, the defendant raises several issues implicating due process; we find no merit to his contentions and we affirm.

*Written Notification.* The defendant first argues that the written notice of surrender referenced only the two charges for which he was arrested by the Mashpee police, and contained no reference to the uncharged misconduct that occurred earlier in the day, when he drove from his home to Crosby's home under a suspended license. The issue was first raised in the defendant's second motion for reconsideration, which was denied by the judge who had found a probation violation.

We agree with the defendant that the written notice was limited on its face to the two charges filed in connection with the incident that occurred on Route 130, and that the notice of violation of probation did not include mention of his operating the motor vehicle on a public way earlier in the day.[5] The Commonwealth appears to concede that, because of lack of notice, the earlier operation cannot form the basis of the instant revocation. We disagree.[6]

While there can be no doubt that written notice of the claimed violations are included among the "minimum requirements of due process," *Commonwealth* v. *Durling*, 407 Mass. 108, 112-

found the defendant in violation based upon his operation after suspension. He also indicated that evidence on which he relied in making the finding included "Mashpee police reports"; "Statement of Kevin Crosby"; "Mashpee P.O. John Read"; "Breath test on D." Given the written finding that revocation was based on "Operating motor vehicle while suspended," and the judge's unequivocal statement that he was not relying on Crosby's statement, we adopt the view that the revocation was based on the defendant's admission that he had been operating the vehicle earlier that day. Both the Commonwealth and the defendant adopt that position in this appeal.

[5]With respect to the alleged violations, the notice stated in full: "You are hereby notified of the following alleged violation(s) of the probation order that was issued to you in the criminal case identified above: You violated a criminal law of the [C]ommonwealth, namely: January 2, 2000 ct process 0089CR00009A op. under infl. # 0089CR00009B op. after susp. lic."

[6]The Commonwealth, having conceded that notice was defective, argues that, even though the trial judge indicated in his findings that he did not rely on Crosby's statement that the defendant was driving, there is ample additional circumstantial evidence to tie the defendant to the operation of the vehicle at the time of the stop. Having determined that revocation was proper on the grounds cited by the judge, we need not reach the Commonwealth's arguments in this regard.

113 (1990),[7] due process is not an inflexible concept. *Ibid.* Flexibility is important both to insure the offender the opportunity inherent in the grant of conditional liberty that probation affords, and to insure the Commonwealth the ability to deal expeditiously with a violation of that opportunity. See *id.* at 113-116. See also *Commonwealth* v. *Sheridan*, 51 Mass. App. Ct. 74, 76-77 (2001). A probation revocation is not a criminal prosecution. *Commonwealth* v. *Durling*, 407 Mass. at 112.

In this case, the written notice did not specifically state the basis upon which the judge based the revocation. The defendant's admission, however, of having driven the vehicle earlier in the day was included in the police reports that were generated in relation to the charges listed on the notice of probation violation. In any event, assuming that the failure to specifically enumerate the misconduct on the face of the notice constitutes error, the issue remains whether the defendant was afforded due process.

We conclude that the actions of defense counsel in introducing the issue at the inception of the hearing, and in vigorously cross-examining the officer on the issue, amply support the conclusion that any error here was harmless. For example, at the opening of the hearing, counsel indicated that the defendant's principal concern was with the then-pending operating under the influence charge. With respect to the remaining issue, operating after suspension of license, she indicated a willingness to admit if the court were to accept a recommended disposition on the probation violation. After discussion about a possible disposition, counsel told the judge the following:

> "There is a second matter of operating after a suspended license. *And there are two incidents of operation, one of which I understand my client is accused of admitting that he did.* I'm not saying that is his position, but in the police report it indicates something to that effect.
>
> "If we could just go forward with regard to that issue

---

[7] See as well Rule 3(b)(ii) of the District Court Rules for Probation Violation Proceedings, which sets forth notice requirements. The rule went into effect four days prior to the notice of surrender.

and not stipulate to the OUI, it would still be a technical violation." (Emphasis supplied.)

At a later stage in the proceeding, counsel engaged in vigorous cross-examination of the officer with regard to the defendant's statement that he had driven the car earlier in the day, and went so far as to elicit a statement from the officer that the defendant might also have told him that a family member, rather than the defendant, drove the car to Crosby's house. Counsel was amply prepared at the start of the hearing to consider the issue of the defendant's admitting to the first occasion of driving after suspension of his license. On the facts of this case, the defendant is unable to demonstrate prejudice resulting from any lack of notice, and this failure to show prejudice is fatal to his claim of error. See *Delisle* v. *Commonwealth*, 416 Mass. 359, 362 (1993). See also *Commonwealth* v. *Odoardi*, 397 Mass. 28, 31-32 (1986). Compare *Commonwealth* v. *Streeter*, 50 Mass. App. Ct. 128, 131-132 (2000).

*Exclusion of the evidence.* The defendant next contends that his admission to police that he had been driving earlier in the day should have been excluded because (a) the statement was made either prior to his being given his Miranda warnings or, if made after the warnings, his waiver was not knowing, voluntary, or intelligent due to his state of intoxication; (b) again due to his state of intoxication, the statement was not made voluntarily for the purposes of the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights and therefore should not have been considered; and (c) the alleged admission was unreliable and insufficient to form the basis of the probation surrender, since it lacked corroborative evidence and was contradicted by information contained in the police reports. We disagree with all three contentions.

(a) *Miranda issue.* Contrary to the defendant's contention, the evidence adduced at the hearing amply demonstrates that he was afforded his Miranda rights before he made the statement that formed the basis of the violation. The record shows that the conversation reported by Coronella, in which the defendant admitted to driving the vehicle that morning, took place after

the defendant had been given his warnings; Read's testimony at the hearing supports this version of events.[8]

Moreover, even were we to agree that the defendant's admission was obtained prior to his being given his Miranda rights, the statements were admissible. Following the rationale established in *United States* v. *Calandra*, 414 U.S. 338 (1974), and in certain other Federal cases dealing with the use of evidence obtained in violation of the Fourth Amendment, the Supreme Judicial Court, in *Commonwealth* v. *Vincente*, 405 Mass. 278, 279-281 (1989), ruled that, even though certain statements made by a defendant were properly suppressed at trial as having been obtained in violation of the defendant's Miranda rights, those same inculpatory statements, perhaps subject to certain considerations not present here, might properly provide the basis for a probation surrender. Where, as here, the primary focus of the police inquiry, including the arrest of the defendant and Crosby for reasons of protective custody, and the ensuing questioning, sobriety tests, and ultimate charge were to prosecute the incident of driving under the influence, the exclusion at a probation revocation hearing of the defendant's statement would be unlikely to serve any deterrent purpose. See *Commonwealth* v. *Olsen*, 405 Mass. 491, 493-494 (1989). See also *Commonwealth* v. *Vincente*, *supra* at 280.

(b) *Fifth and Fourteenth Amendment voluntariness.* Simon next argues that the statement he made at the police station should have been inadmissible at the probation revocation hearing, on the basis that it was not made voluntarily due to his intoxication, and therefore was taken in violation of his Fifth and Fourteenth Amendment due process rights. The defendant's claim of intoxication, standing alone, is insufficient to establish

---

[8]Coronella's report states in pertinent part: "During the booking process [the defendant] was read his Miranda rights state [*sic*] that he understood them. [The defendant] was read his rights under [G. L. c.] 265 section 5a and stated that he wanted to take the breath test. [The defendant] was given the test and the results were as follows. . . . [The defendant] was again asked how he got to the . . . game. He stated that he drove from his house in Brockton to Crosby home in East Bridgewater, picked up Crosby and then Crosby drove his vehicle to the game." Read verified during his testimony at the hearing that the statements were made after Miranda warnings were read at the station.

that his statement was involuntary. See *Commonwealth* v. *Griffin*, 19 Mass. App. Ct. 174, 183 & n.8 (1995).

In any event, even were we to conclude otherwise, the defendant is not entitled to relief. In the context of a criminal trial, where evidence of intoxication has been presented, and the voluntariness of statements is in issue, even where there is no question that Miranda warnings were given before a defendant made admissions, a trial judge is obliged to make an affirmative finding on the voluntariness of those admissions under the Fifth and Fourteenth Amendments before a jury is allowed to consider them. See *Commonwealth* v. *Van Melkebeke*, 48 Mass. App. Ct. 364, 366 (1997). See also *Commonwealth* v. *Mello*, 420 Mass. 375, 383 (1995) ("special care is taken to review the issue of voluntariness where the defendant claims to have been under the influence of drugs or alcohol"). Such special care with regard to intoxication is necessary; the United States Supreme Court has noted, "as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the 'voluntariness' calculus." *Colorado* v. *Connelly*, 479 U.S. 157, 164 (1986).

Although we have found no case in Massachusetts that resolves whether a similarly careful inquiry to determine admissibility need take place on the bases of Fifth and Fourteenth Amendment due process at a probation revocation hearing, we find instructive the reasoning in the decisional law related to Fourth Amendment violations. In such circumstances, most Federal courts refuse to apply the exclusionary rule to probation revocation proceedings absent evidence of police harassment, or at least police knowledge of the petitioner's probationary status. See *United States* v. *Gravina*, 906 F. Supp. 50, 53-54 (D. Mass. 1995).[9] Nothing in the evidence here points to police harassment when the defendant was interviewed or when he made the

---

[9]The United States District Court for Massachusetts explained: (1) the Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits have refused to apply the exclusionary rule to evidence seized in violation of the Fourth Amendment when determining probation, parole, or supervised release revocation; (2) most of these jurisdictions provide an exception that such evidence is inadmissible where the defendant suffered harassment; (3) the Second Circuit applies the exclusionary rule where the probation officer is aware of the

statement after being read his Miranda rights. Compare *United States* v. *Gravina, supra* at 54, quoting from *United States* v. *James,* 893 F. Supp. 649, 650-651 (E.D. Tex. 1995) ("an element of constancy should be present in the type of harassment necessary to invoke the exclusionary rule . . . . [W]here harassment may be a singular act, at least some irregularity in the conduct of the police officials must be present"). While the police officers were aware of Simon's probationary status, only two Federal jurisdictions exclude statements for this reason alone.[10] See, e.g., *United States* v. *Gravina, supra* at 53-54. See also note 9, *supra.* Further, the police had already placed the defendant under arrest for driving under the influence, and the record shows that their inquiry was targeted to elicit evidence in support of a conviction on that offense, rather than for the purpose of eliciting information by which probation could be revoked. Compare *Commonwealth* v. *Vincente,* 405 Mass. at 280, and cases cited ("The Federal courts have concluded that, in most instances, a police officer is primarily interested in obtaining evidence with which to convict a defendant. Revocation of probation is generally only a minor consideration, and therefore the risk that illegally obtained evidence might be excluded from such proceedings is likely to have only a marginal additional deterrent effect on illegal police misconduct").

In addition, we note that the United States Supreme Court has drawn no distinction in its analysis of the "voluntary" waiver of the personal right against self-incrimination protected by the Miranda warnings on the one hand, and the due process-based "voluntariness" of a statement protected by the Fifth and Fourteenth Amendments on the other hand. See *Colorado* v.

target's probationary status, but not where a police officer is unaware of that status; and (4) the Fourth Circuit "stands alone" in excluding all evidence obtained by unconstitutional searches from probation revocation hearings. See *United States* v. *Gravina, supra,* and cases cited. See also Annot., Admissibility, in Federal Probation Revocation Proceeding, of Evidence Obtained Through Unreasonable Search and Seizure or in Absence of Miranda Warnings, 30 A.L.R. Fed. 824, 829-835 (1976 & Supp. 2002).

[10]The Supreme Judicial Court, in *Commonwealth* v. *Olsen,* 405 Mass. 491, 496 (1989), expressly left open the question whether a police officer's knowledge of a probationer's status would compel exclusion of evidence obtained.

*Connelly*, 479 U.S. at 169-170. Similarly, the Supreme Court "cautioned against expanding 'currently applicable exclusionary rules,' " into an area where they could serve little purpose in the protection of constitutional guarantees against police overreaching. See *id.* at 166, quoting from *Lego* v. *Twomey*, 404 U.S. 477, 488-489 (1972).

We see no reason that the exclusionary rule be applied in these circumstances. "In Federal law and in most jurisdictions, the exclusionary rule does not apply as a matter of course to probation revocation proceedings because the 'application of the exclusionary rule is restricted to those areas where its remedial objectives are thought most efficaciously served.' See *Commonwealth* v. *Vincente, supra* at 280, quoting [from] *United States* v. *Calandra*, 414 U.S. 338, 348 (1974)." *Commonwealth* v. *Olsen*, 405 Mass. at 493. " 'Evidence that a probationer is not complying with the conditions of probation may indicate that he or she has not been rehabilitated and continues to pose a threat to the public.' *Commonwealth* v. *Vincente, supra* at 280. Accordingly, 'the State has an overwhelming interest in being able to return an individual to imprisonment without the burden of a new adversary criminal trial if in fact [the probationer] has failed to abide by the conditions of his [or her probation].' *Morrissey* [v. *Brewer*, 408 U.S. 471,] 483 [(1972)]. We weigh this overwhelming State interest in admitting all reliable evidence against the deterrent purpose of the exclusionary rule." *Commonwealth* v. *Olsen, supra* at 493-494.

Thus, we conclude that the exclusionary rule does not render the defendant's statement inadmissible, even were we to determine that the statement had been given involuntarily, when, as here, there is no evidence that the statement was the product of police harassment or the result of a police focus to obtain evidence specifically for a probation revocation hearing.

(c) *Reliability of the admission.* Simon finally argues that the statement, that he operated the vehicle from his home to Crosby's home that morning, is insufficiently reliable, first because it is unsubstantiated by other corroborating evidence, and, second, because it is hearsay, reported by one officer, and contradicted by other evidence in the hearing. Although a probation revocation hearing is not a criminal trial, and the defendant need not

be given the "full panoply of constitutional protections," due process requires that probationers be afforded some protections upon an attempt to revoke their probation, as liberty interests are at stake. *Commonwealth* v. *Durling,* 407 Mass. at 112. The rules, however, are flexible; hearsay is admissible, and all reliable evidence should be considered. See *id.* at 113-117. Even the right of confrontation may be denied if the "hearing officer specifically finds good cause for not allowing confrontation." *Gagnon* v. *Scarpelli,* 411 U.S. 778, 786 (1973). See *Durling, supra* at 115. At a revocation hearing, due process has the ultimate goal of providing an accurate determination as to whether revocation is proper. See *Durling, supra* at 116.

Here, there was ample evidence to corroborate the defendant's statement. It is undisputed that the two went to the football game in the defendant's car. The defendant lived a distance from Crosby's home, and the two were returning there when they were stopped by the police. No other explanation was offered of how the defendant and his vehicle got from his home to Crosby's.[11] The cases cited by the defendant in his brief, *Commonwealth* v. *Forde,* 392 Mass. 453, 457 (1984), and *Commonwealth* v. *Leonard,* 401 Mass. 470, 473 (1988), are inapposite; in neither case was there anything at all to corroborate the admission. As there was corroboration in this instance, we need not reach the issue whether corroboration is in fact necessary for an admission in the context of a hearing on surrender.

As to the claim that the hearsay was unreliable, we note only that Read testified that he was present when the defendant admitted to driving earlier in the day, and that he had made a note of it in his police report. Read was present at the hearing and subject to cross-examination. The statement was an admission against interest made by the defendant to police officers at

---

[11]Defense counsel makes much of the fact that on cross-examination, Read admitted that it was possible that he had been told that a family member had driven the defendant from his home to Crosby's home. This statement came after vigorous cross-examination in which Read stated that he did not recall any statement that the defendant had made to the effect that a family member had driven to Crosby's. Any determination of the weight and credibility of Read's testimony was for the judge, and the contradiction was not so egregious as to cause us to conclude that the judge committed plain error. See *Commonwealth* v. *Tate,* 34 Mass. App. Ct. 446, 450-451 (1993).

a time when the officers were investigating him for another alleged crime, operating under the influence. The defendant, though present in court, chose to remain silent. Declarations against penal interest are admissible for the truth of the matters asserted. See *Commonwealth* v. *Cruz*, 53 Mass. App. Ct. 393, 401 (2001); Liacos, Brodin & Avery, Massachusetts Evidence § 8.10, at 516 (7th ed. 1999). The hearsay was both credible and reliable.

*Order revoking probation*
*affirmed.*