NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-454

COMMONWEALTH

vs.

SCOTT K. TAVARES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Scott K. Tavares, appeals from an order of a Boston Municipal Court judge revoking his probation based on a finding that he committed new criminal offenses.  The defendant now appeals, asserting that (1) he received ineffective assistance of counsel and (2) his right to due process was violated.  We affirm.

Background.  In 2021, the defendant pleaded guilty to possession with intent to distribute a class A controlled substance, G. L. c. 94C, § 32 (a), and possession with intent to distribute a class B controlled substance, G. L. c. 94C, § 32A (a).  He was sentenced to two concurrent terms of two years in the house of correction, with ninety days deemed served

and the balance suspended for two years, during which he was placed on probation.

The probation department alleged that on April 15, 2023, the defendant violated his probation by committing larceny over $1,200 and conspiracy to commit larceny related to shoplifting at an Ulta Beauty store in Taunton (Taunton incident). Ulta Beauty is a chain of cosmetic stores. The probation department alleged that the defendant and another man "essentially created a diversion" by starting a fight while a woman stole items from the store.

The probation violation hearing was held on November 7, 2023. The police detective who investigated the Taunton incident was not available to testify. Ulta Beauty did not send anyone from its store to testify. The only witness called by the probation department was a police detective from Stoughton. At the outset, the defendant objected to the Stoughton detective's testimony because he had earlier investigated a similar incident allegedly involving the defendant at an Ulta Beauty store in Stoughton (Stoughton incident). According to defense counsel, the probation department charged the defendant with a probation violation based on the Stoughton incident, but ultimately, no violation was found. In response, the prosecutor, who was assisting the probation department at the hearing, stated that the Stoughton detective would testify that

2

he had watched surveillance video recordings of both the Stoughton incident and the Taunton incident and determined that the same three individuals were involved in each, thus showing an ongoing pattern or conspiracy. The judge ruled that the Stoughton detective could "testify to what he did himself." He also admitted in evidence surveillance video recordings of the Taunton incident without objection, but excluded surveillance video recordings of the Stoughton incident because they had been produced to defense counsel only that morning.

The Stoughton detective testified that he reviewed surveillance video recordings that Ulta Beauty made available to him through an Internet based software program. He was able to identify from the video recordings of the Taunton incident a woman whom he "previously charged . . . with shoplifting at the Ulta Beauty in Stoughton." Those recordings showed the woman entering the store, two men entering who later got into a "scuffle," and then the woman leaving. The detective testified that he notified the Taunton police department "of the two identifications that I was aware of," whom he described as "the female and the black male in the blue polo shirt," and that "Taunton ended up charging" the woman and the defendant.

During cross-examination, defense counsel sought to establish that the woman and the two men shown in the Taunton

3

video recordings had not acted in close coordination.  She began,

> Q.:  "So, Detective O'Connor, you mentioned that you saw a female enter the store and you were familiar with her because you charged her before?"
>
> A.:  "Yes."
>
> Q.:  "And those were also larcen[ies] from Ulta Beauty, correct?"
>
> A.:  "Yes."
>
> Q.:  "And in those instances, there weren't two men with her; she was just -- she was by herself, basically? There weren't the men that you saw in the video with her?"
>
> A.:  "In one there was and one there was not.  So, yes."

Defense counsel then elicited from the detective that the two men entered the Taunton store about five to six minutes after the woman entered, they did not enter or leave the store together, and the detective did not know what they argued about or exactly when the defendant left the store in relation to the woman.

On redirect examination, the prosecutor asked the detective to describe the Stoughton incident, and the judge overruled the defendant's objection because "the door was opened."  The detective testified that the Stoughton incident occurred on April 14, 2023 (the day before the Taunton incident), and that the defendant wore the same blue polo shirt during both incidents.  In addition, again because "the defense opened that

4

door," the judge reconsidered his earlier ruling excluding the surveillance video recordings of the Stoughton incident. The recordings were admitted, and the detective provided additional testimony regarding the Stoughton incident and the defendant's involvement in it.

At the conclusion of the hearing, the judge determined "that the defendant did conspire with [the woman] and a third party to commit a larceny" and "that [the defendant] has violated his probation."

Discussion. 1. Ineffective assistance of counsel. The defendant contends that he received ineffective assistance of counsel at the probation violation hearing because, during her cross-examination of the Stoughton detective, his attorney "needlessly" opened the door to the admission of previously excluded evidence regarding the Stoughton incident. The defendant did not raise the issue of ineffective assistance of counsel in any posthearing motion, but does so now on direct appeal. As "our courts strongly disfavor raising claims of ineffective assistance on direct appeal," Commonwealth v. Zinser, 446 Mass. 807, 811 (2006), such claims "should only be brought on direct appeal when the factual basis of the claim appears indisputably on the trial record," Commonwealth v. Keon K., 70 Mass. App. Ct. 568, 573-574 (2007).

"To sustain a claim of ineffective assistance of counsel, the defendant must show that [1] the behavior of counsel fell below that of an 'ordinary fallible lawyer' and [2] that such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Bowen, 92 Mass. App. Ct. 793, 798 (2018), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "Where, as here, the defendant's ineffective assistance of counsel claim is based on a tactical or strategic decision, the test is whether the decision was manifestly unreasonable when made" (quotation and citation omitted). Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015). "The inquiry involves both temporal and substantive considerations. The temporal consideration limits the effect of hindsight by requiring a focus on the point in time when counsel made the challenged strategic decision" (citation omitted). Id. "Substantively, '[o]nly "strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent"' are manifestly unreasonable." Id., quoting Commonwealth v. Pillai, 445 Mass. 175, 186-187 (2005).

The defendant contends that defense counsel provided ineffective assistance of counsel by choosing to cross-examine the Stoughton detective at all. Had counsel instead waived cross-examination, the defendant argues, the probation department would not have been able to prove by a preponderance

6

of the evidence that the defendant engaged in a larceny as a joint venturer and conspiracy to commit larceny.  See Commonwealth v. Sargent, 98 Mass. App. Ct. 27, 29 (2020) ("we uphold a judge's finding of a probation violation if it is supported by a preponderance of the evidence").  We are not persuaded.

We cannot say that it was manifestly unreasonable for defense counsel to fail to anticipate that her questions would "open the door" to admission of the Stoughton video recordings. Although the judge initially ruled that the probation department could not present the Stoughton recordings because they had not been produced to defense counsel until the morning of the hearing, the judge effectively allowed the Stoughton detective to testify about the Stoughton incident by stating that he could "testify to what he did himself."  The detective proceeded to do so by testifying that he could identify the woman involved in the Taunton incident because he had "previously charged her with shoplifting at the Ulta Beauty in Stoughton," and by effectively testifying that he also identified "the black male in the blue polo shirt" in the Taunton recordings as the defendant.  Based on those rulings and earlier testimony by the detective, it was not unreasonable for defense counsel to think that she too could ask him about the Stoughton incident without "opening the door" to the admission of the Stoughton recordings.

7

Nor can we say that the questions actually asked by defense counsel during cross-examination of the Stoughton detective fell below the performance of an "ordinary fallible lawyer." Saferian, 366 Mass. at 96. Through those questions, defense counsel attempted to cast doubt on the notion that the woman and man alleged to be the defendant in the Taunton surveillance videos were coconspirators. She did so by inquiring about other incidents in which the detective was aware that the woman had shoplifted and the two men were not present. She succeeded in eliciting from the detective that in one video (or perhaps one prior incident) the men were not with the woman. She also sought to undermine the probation department's contention that the three people were acting in a conspiracy because they entered and left the Taunton store at different times. Without resorting to speculation, we cannot say on this record whether counsel would have taken a different approach to cross-examination had she been able to review the Stoughton video recordings before the hearing, or had she anticipated that the judge might reverse course on his ruling excluding the Stoughton video recordings from evidence. In assessing the reasonableness of counsel's tactical decision, however, we are required to focus on "the point in time when counsel made the challenged strategic decision." Kolenovic, 471 Mass. at 674. Based on the limited record before us, in the absence of a motion for a new

hearing supported by affidavits and evidence, we cannot say that the defendant was denied effective assistance of counsel under the appropriate standards.

2. Due process. The defendant also claims that the revocation of his probation was improper because he did not receive adequate notice of the evidence used against him at the hearing, specifically, the surveillance video recordings of the Stoughton incident. Due process entitles a defendant to written notice of the alleged violation of probation and disclosure of the evidence against him. See Commonwealth v. Wilcox, 446 Mass. 61, 66 (2006); Commonwealth v. Durling, 407 Mass. 108, 113 (1990). At the same time, "[d]ue process, by its nature, is a flexible concept." Durling, supra. To obtain relief, a defendant must "demonstrate prejudice resulting from any lack of notice, and . . . failure to show prejudice is fatal to his claim of error." Commonwealth v. Simon, 57 Mass. App. Ct. 80, 86 (2003).

The defendant has shown no such prejudice here. As discussed, the judge initially excluded the Stoughton surveillance video recordings after defense counsel objected to their late production,[1] but reversed course after finding that

_____

[1] At the hearing, defense counsel stated that she had been provided with a compact disc containing the video recordings that morning and had "only viewed the video from Taunton," not the Stoughton recordings. The record does not clearly indicate

9

her cross-examination of the Stoughton detective "opened the door" to that evidence.  After making that decision, the judge announced a recess of the proceeding so that "defense counsel [could] view those videos and then resume the hearing."  The judge directed counsel to "[t]ake some time to watch the video[s] and let me know when you're done."  The judge further advised that if counsel needed additional time to review the recordings, the hearing would be continued to another date.  Following the recess, the defendant did not request additional review time, request a continuance, or object to the hearing's resumption.  Because the defendant was allowed a meaningful opportunity to review and respond to the evidence after the judge ruled on its admission, we cannot conclude that any lack of notice was prejudicial.

> Order revoking probation
>   affirmed.
>
> By the Court (Sacks,
>   Hodgens & Toone, JJ.[2]),

_Paul Little_

Clerk

Entered:  March 9, 2026.

---

what other information defense counsel had with regard to the Stoughton recordings prior to the hearing.

[2] The panelists are listed in order of seniority.