Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 14, 2009        Decided October 23, 2009

No. 07-3025

UNITED STATES OF AMERICA,
APPELLEE

v.

JEROME H. JONES,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 05cr00441-01)

*Dennis M. Hart*, appointed by the court, argued the cause and filed the brief for appellant.

*Leslie A. Gerardo*, Assistant U.S. Attorney, argued the cause for appellee.  With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese III* and *Chrisellen R. Kolb*, Assistant U.S. Attorneys.

Before: ROGERS, TATEL and BROWN, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: In the District of Columbia it is a misdemeanor to drink alcoholic beverages in a public place. Specifically, "no person in the District [of Columbia] shall drink an alcoholic beverage or possess in an open container an alcoholic beverage in or upon . . . [a] street . . . [or] sidewalk." D.C. Code § 25-1001(a)(1). The question on appeal is whether there was a proper investigative stop of appellant under *Terry v. Ohio*, 392 U.S. 1 (1968), to determine whether he was violating the statute. *See Ornelas v. United States*, 517 U.S. 690, 697 (1996).

## I.

Around midnight on Saturday, October 15, 2005, Officer Leroy Rollins of the Metropolitan Police Department arrived, on duty, in an unmarked vehicle at the 1100 block of Talbert Street SE, Washington, D.C., an area he "felt" was a high crime area, Hr'g Tr. 10, July 19, 2006. He was on patrol with approximately five other officers, some of whom were in a separate vehicle. Rollins was wearing a black utility vest with "POLICE" in large letters on the front and back. Officer Rollins testified that upon arrival he "observed approximately 15 or 20 [people] gathered throughout the block" in what "appeared to be somewhat of a party atmosphere." *Id.* at 4. Rollins parked his car in the middle of the street, and the officers got out of their vehicles.

The group of people began to disperse as the police approached, and, according to Officer Rollins, appellant, unlike the others, "began to walk away at a very fast pace." *Id.* at 4. Rollins "noticed that [appellant] had a large, white styrofoam cup" in his hand, *id.*, as well as "a brown paper bag . . . in his arm," *id.* at 4–5. Rollins walked toward appellant and,

according to Rollins, appellant stated: "I ain't doing nothing. I'm just drinking." *Id.* at 5. Appellant did not appear to be stumbling, and Rollins did not notice whether appellant was slurring his words, nor did Rollins pay attention to whether appellant smelled of alcohol. Rollins also could not see what was in the cup or the brown bag. However, based on the styrofoam cup, the brown bag, and appellant's statement that he was drinking, Rollins "believed that [appellant] was in possession of a container of alcohol," *id.* at 7, an arrestable offense, *id.*

Continuing to walk toward appellant and intending to "investigate further," *id.* at 14, Officer Rollins instructed appellant to "Come here," *id.* at 5. They were less than ten feet apart when Rollins first encountered him. Appellant then "pushed [Rollins] in the chest area and reached toward the right side of his waist band." *Id.* Once appellant reached toward his waist band, Rollins "believed he was in possession of a gun" and therefore "immediately grabbed him and pushed him up against the police car." *Id.* Appellant again reached toward the right side of his waist, and Rollins "tr[ied] to pull his hand away from his waistband." *Id.* at 6. The struggle ensued for approximately thirty to forty seconds, after which several police officers came to assist and wrestled appellant to the ground. While on the ground, appellant's shirt came up above his waist, revealing "a large caliber handgun in the right side of his waist." *Id.* Rollins took the gun from appellant's waist and saw it was loaded with "ten rounds in the magazine, and . . . one round in [the] chamber." *Id.* at 7. Upon recovery of the gun, appellant was placed under arrest. Afterwards, Rollins discovered that inside the brown paper bag were a bottle containing vodka and another containing cranberry juice, and both had been "opened." *Id.* at 23. The top of the styrofoam cup had come off; there was ice in the cup, but nothing else.

The district court denied appellant's motion to suppress the gun and ammunition and his statement. Appellant then pleaded guilty, conditioned upon his right to bring the instant appeal, to the indictment charging one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

## II.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause . . . ." A narrow exception to the warrant requirement exists under *Terry*, whereby "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). The required level of suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less demanding than that for probable cause," but "[t]he officer, of course, must be able to articulate something more than an 'inchoate and unparticularized suspicion or "hunch." ' " *Id.* (quoting *Terry*, 392 U.S. at 27). In determining whether reasonable suspicion existed, the court considers "the totality of the circumstances as the officer on the scene experienced them." *United States v. Edmonds*, 240 F.3d 55, 59 (D.C. Cir. 2001); *see Sokolow*, 490 U.S. at 8–9.

"[A] stop [or seizure] takes place '[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen,' *Terry,* 392 U.S. at 19 n.16, or, put differently 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have

believed that he was not free to leave,' *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991)," *United States v. Goddard*, 491 F.3d 457, 460 (D.C. Cir. 2007) (alteration in *Terry*).  Not all interactions between police and citizens are stops, and this court has considered several factors in determining whether a stop has occurred: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled," *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality opinion), as well as the approaching officer's demeanor, whether the officer was wearing a uniform, and the time and place of the purported stop. *Goddard*, 491 F.3d at 460.

The evidence showed that it was a Fall Saturday night, around midnight, and fifteen to twenty people were outside in a block of a residential neighborhood.  According to the officer who testified at the suppression hearing, there "appeared to be somewhat of a party atmosphere."  Appellant was carrying a large white styrofoam cup in his hand and a brown paper bag under his arm.  Five or six police officers exited two cars.  The group of people started dispersing in a direction away from the officers.

At this point, we agree with appellant, there was not a basis for a *Terry* stop.  There was no report of possible criminal wrongdoing by him.  The police were not responding to a citizen complaint of any kind, much less one for unlawful conduct.  The police were not in the process of conducting an investigation that was focusing on appellant or any of the other "partying" people.  Hence, the fact that the officer considered the neighborhood to be a high crime area, due to illegal narcotics trafficking, might explain why the officers were on patrol there that night but otherwise does not enter into the calculus of whether the officer had articulable suspicion for a *Terry* stop of

appellant for possible violation of D.C. Code § 25-1001. Moreover, the officer neither saw or smelled alcohol nor testified that appellant or anyone else in the group appeared to be drunk.  There was not even evidence there was anything in the cup appellant was holding, much less the color or smell of its contents; the cup and the brown bag were opaque, and the officer's testimony that he observed afterward that "the top had c[o]me off the cup," Hr'g Tr. 23, is consistent with appellant holding a covered cup when the officer first saw him.

It cannot be gainsaid that the Fourth Amendment protects, as Justice Brandeis' oft-cited observation points out, "the right to be let alone," *Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting), in a party atmosphere or otherwise.  *See Terry*, 392 U.S. at 8–9.  Merely walking away, even quickly as appellant did, upon the arrival of the uniformed police officer would not provide articulable suspicion of criminal wrongdoing by appellant.  *Cf. Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000).  The officer did not testify he thought appellant was fleeing from the police, only that his pace of movement, in contrast with others in the group, was what caused the officer to notice him.  Merely holding a styrofoam cup, covered or uncovered, would not tip the balance, even when the same person was also holding a paper bag under his arm.  *Cf. United States v. Powell*, 483 F.3d 836, 838 (D.C. Cir. 2007).

However, before appellant was seized by the police, he voluntarily stated to a uniformed officer who had just exited his car, "I ain't doing nothing.  I'm just drinking."  In response, as the officer approached he ordered appellant to "Come here," i.e., "to reverse his line of travel, [and] stop his exit from the scene," Appellant's Br. 14.  The parties agree, as counsel for the government acknowledged during oral argument, that at this point appellant was seized for purposes of the Fourth Amendment.  *Terry*, 392 U.S. at 16.  Appellant's voluntary

statement tipped the balance from providing a mere hunch to articulable suspicion of possible ongoing criminal wrongdoing. With appellant's statement the officer had a reasonable suspicion supported by articulable facts to make a *Terry* stop in order to investigate whether or not appellant was violating D.C. Code § 25-1001. Even though appellant may have intended to avoid any police interaction by asserting he was not violating the law, his statement was in the present tense about an activity that is criminal in certain circumstances. And it was late on Saturday night and people were gathered outside in a "party" atmosphere. The crowd was moving away from the police, and one of the partying persons had acknowledged while on the street and moving away quickly that he was drinking. That person also had the means to do so: a styrofoam cup in his hand into which to pour the contents of the brown bag under his arm.

It takes little imagination to suspect that there might be alcohol in the styrofoam cup or the brown paper bag that appellant was holding. But it also is possible that appellant was merely drinking fruit juice or some other non-alcoholic beverage, or that the cup was empty and the bag contained closed containers or non-alcoholic items. So the officer pursued the minimal investigative step by approaching appellant and ordering him to "Come here" in order to determine whether or not appellant was drinking or possessing an open container of alcohol, and if so to place him under arrest for violation of D.C. Code § 25-1001. In *Terry* the Supreme Court reaffirmed that "courts still retain their traditional responsibility to guard against police conduct which is over-bearing or harassing . . . ," while "approv[ing] of legitimate and restrained investigative conduct undertaken on the basis of ample factual justification," 392 U.S. at 15, as occurred here. In urging district court error, appellant states that "the only observation by [the] police was the possession of a white styrofoam cup in the hand of the [a]ppellant," Appellant's Br. 8, which ignores the brown bag, a

place to carry bottles, as well as the effect of his own potentially incriminating statement, *see Terry*, 39 U.S. at 15.  By focusing on what the officer did not know at the time he ordered appellant to "Come here" and approached, appellant ignores that articulable suspicion under *Terry* need not rise to the level of a preponderance of the evidence or even probable cause, *see Edmonds*, 240 F.3d at 59 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

Because, under the totality of the circumstances, the police officer's action in seizing appellant was reasonable under the Fourth Amendment, appellant fails to show that the stop was unlawful.  Once appellant pushed the officer and went for his own waistband, the officer had probable cause to arrest appellant for assaulting a police officer, D.C. Code § 22-405, and to search for a gun and lawfully seize it pursuant to an arrest, *see, e.g., Chimel v. California*, 395 U.S. 752, 762–63 (1969); *United States v. Mapp*, 476 F.3d 1012, 1017 (D.C. Cir. 2007); *see also Terry*, 392 U.S. at 27.  Accordingly, we affirm the judgment of conviction under 18 U.S.C. § 922(g)(1).