14-3243-cr
*United States v. Singletary*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2014

(Argued: June 17, 2015       Decided: July 14, 2015)

Docket No. 14-3243-cr

UNITED STATES OF AMERICA,

*Appellant,*

—v.—

LAVERNE SINGLETARY,

*Defendant-Appellee.*

Before:

LEVAL, STRAUB, and RAGGI, *Circuit Judges.*

On interlocutory appeal from a suppression order entered in the Western

District of New York (Geraci, *J.*; Feldman, *M.J.*), the United States contends that

contraband seized incident to arrest was not the fruit of an unlawful initial stop.

1

We conclude that the challenged stop was lawful under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), in that it was supported by reasonable suspicion of an open-container violation, evidenced by such articulable, objective facts as defendant's observed (1) carrying of a beer-can-sized object (2) concealed by a brown paper bag and (3) held in such a manner as to avoid spillage.

REVERSED AND REMANDED.

———————

JOSEPH J. KARASZEWSKI, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, New York, *for Appellant*.

JON P. GETZ, Muldoon, Getz & Reston, Rochester, New York, *for Defendant-Appellee*.

———————

REENA RAGGI, *Circuit Judge*:

The United States appeals from an order of the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *Judge*; Jonathan W. Feldman, *Magistrate Judge*), suppressing drugs and a firearm seized incident to the arrest of defendant Laverne Singletary. See <u>United States v. Singletary</u>, 37 F. Supp. 3d 601 (W.D.N.Y. 2014). The district court concluded that the seized contraband was the fruit of an initial unlawful investigatory stop made without

the reasonable suspicion of criminal activity required by <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). In urging reversal, the government maintains that reasonable suspicion to investigate defendant for possible violation of a local open-container ordinance was supported by articulable, objective facts, including defendant's observed (1) carrying of a beer-can-sized object (2) concealed in a brown paper bag and (3) held in such a manner as to avoid spillage. We agree and reverse the challenged suppression order.

## I.    <u>Background</u>

### A.    <u>The Challenged Stop and Ensuing Arrest and Seizures</u>[1]

The stop at issue occurred at approximately 10:45 p.m. on October 6, 2012, in the vicinity of Roth and Flower Streets in Rochester, New York. Rochester Police Officer Amy Pfeffer was on car patrol with Monroe County Probation Officer Robert Masucci, when she saw a man, subsequently identified as

---

[1] The facts reported herein were developed at a suppression hearing before Magistrate Judge Feldman. The critical issue on this appeal, as it was before the district court, is whether these facts were sufficient, as a matter of law, to give police officers reasonable suspicion of criminal activity warranting a brief investigatory stop.

defendant Laverne Singletary, walking on the sidewalk.[2]  Pfeffer proceeded to

shine her vehicle's spotlight on the man because the area had a high incidence of

violence.  Pfeffer saw that the man was holding an object wrapped in a brown

paper bag.  Although she could not tell for certain what the object was, she saw

that it was the size of a standard beer can.  Based on seven years' police

experience, Pfeffer knew that persons frequently concealed open containers of

alcohol in brown paper bags because such possession in public was prohibited

by local law.  See Rochester Mun. Code § 44-9(C) ("No person shall possess an

open container of any alcoholic beverage in a public place with the intent to

consume the beverage in a public place.").[3]  Pfeffer further saw that the man was

holding the bag-wrapped container very steadily, as if to avoid spilling its

contents.  From the totality of these circumstances, Pfeffer concluded that it was

---

[2] The two officers had just concluded a "Night Watch" detail, whereby members of the Rochester Police Department accompanied probation officers on unscheduled visits to probationers' homes.  Singletary was not on probation at the time of the events at issue.

[3] The ordinance, which is available at http://www.ecode360.com/8675322 (last accessed July 6, 2015), also creates a "rebuttable presumption" that a person in possession "of an open container of an alcoholic beverage in a public place . . . intends to consume the beverage in such place."  Rochester Mun. Code § 44-9(E)(1).

possible that the man was violating the open-container ordinance and that further investigation was warranted.

Bringing the police car she was driving to a halt, Pfeffer told Officer Masucci to "stop that guy, he's got an open container." Oct. 10, 2013 Suppression Hr'g Tr. ("Hr'g Tr.") 67. Both officers exited their vehicle, first Masucci and then Pfeffer, whereupon the latter ordered Singletary to stop. Singletary replied, "Who me?" and quickly walked away. Id. at 14. This prompted Masucci, who was positioned in front of Singletary, to put his hand on Singletary's right shoulder to deter further movement. Instantly, Singletary tossed the bagged can he was carrying behind him, pushed Masucci's hand away, and proceeded to run from the officers. As Singletary did so, some of the can's contents spilled on Pfeffer, who could smell that it was, in fact, beer.

The officers gave chase, but as they were about to tackle Singletary, he stumbled, such that all three persons fell to the ground. A struggle ensued before the officers were able to handcuff Singletary and place him under arrest. As they lifted him off the ground, the officers observed a handgun at the site of the struggle, which they proceeded to seize. A search of Singletary's person

resulted in the further seizure of thirteen bags of marijuana found inside the front pocket of his sweatshirt.

B.    Procedural History

On April 30, 2013, a federal grand jury in the Western District of New York indicted Singletary for possession of marijuana with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.[4]  See 21 U.S.C. § 841(a)(1), (b)(1)(D); 18 U.S.C. §§ 922(g), 924(c).  Singletary moved to suppress the physical evidence seized from him incident to arrest, including the charged firearm and drugs.  He maintained that these seizures were the tainted fruit of an initial stop made without reasonable suspicion of criminal activity.

After an evidentiary hearing at which only Officer Pfeffer testified as to the circumstances of the stop and ensuing arrest and seizures,[5] Magistrate Judge Feldman filed a report with the district court recommending suppression of the

_____

[4] The indictment alleges that Singletary has previously been convicted of four violent felonies, in 1989, 1998, 2005, and 2009, respectively.

[5] A second witness, Public Safety Aide Julie Gulino, authenticated a videotape of the incident.  The district court denied Singletary's motion to suppress the video evidence, and that aspect of the court's decision is not before us on this appeal.

6

seized evidence. The report concluded that the initial stop was supported by only a "hunch" that Singletary was violating the open-container ordinance when walking down the street, not the reasonable suspicion demanded by Terry v. Ohio, 392 U.S. 1. See United States v. Singletary, 37 F. Supp. 3d at 611. The report further concluded that because Singletary discarded the bag-wrapped can during an unlawful stop, the beer spilled on Pfeffer as a result could not provide untainted evidence of probable cause for Singletary's arrest that independently validated the challenged seizures. See id. at 611–13.

The government filed objections to the report, which the district court rejected in its August 8, 2014 memorandum adopting the report and recommendation in its entirety and ordering suppression of the charged firearm and drugs. See id. at 603–06.

The government timely filed this interlocutory appeal. See 18 U.S.C. § 3731.

II.     **Discussion**

On review of a challenged suppression order, we examine the district court's findings of fact for clear error, while applying de novo review to its resolution of questions of law and mixed questions of law and fact, such as the

7

existence of reasonable suspicion to stop and probable cause to arrest. See

Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Lucky, 569

F.3d 101, 105–06 (2d Cir. 2009). These standards inform our consideration of the

two arguments advanced by the government in urging reversal of the

suppression order in this case. First, the government defends the initial stop,

maintaining that it was supported by reasonable suspicion to think Singletary

might be violating Rochester's open-container ordinance. Second, and in any

event, it contends that Singletary's ensuing actions in discarding the bagged can

and fleeing the scene sufficiently attenuated any initial illegality and provided

independent probable cause for his arrest and the seizures incident thereto. We

agree with the first argument and, thus, need not reach the second.

A.    Investigatory Stops

The Fourth Amendment states that "[t]he right of the people to be secure

in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated."   U.S. Const. amend. IV.   As this language

indicates, the Amendment's "ultimate touchstone . . . is 'reasonableness,'" Riley

v. California, 134 S. Ct. 2473, 2482 (2014) (internal quotation marks omitted), "a

matter generally determined by balancing the particular need to search or seize

8

against the privacy interests invaded by such action," United States v. Bailey, 743 F.3d 322, 331 (2d Cir. 2014) (collecting cases). Such balancing usually demands that searches be conducted pursuant to judicial warrants supported by probable cause, but "neither a warrant nor probable cause . . . is an indispensable component of reasonableness in every circumstance." National Treasury Emps. Union v. Von Raab, 489 U.S. 656, 665 (1989).

In Terry v. Ohio, the Supreme Court "expressly recognized that government interests in 'effective crime prevention and detection,' as well as in officer and public safety while pursuing criminal investigations, could make it constitutionally reasonable 'in appropriate circumstances and in an appropriate manner' temporarily to detain a person" to investigate possible criminality even in the absence of a warrant or probable cause for arrest. United States v. Bailey, 743 F.3d at 331–32 (quoting Terry, 392 U.S. at 22–25). To justify a Terry stop, there must be "a reasonable basis to think that the person to be detained 'is committing or has committed a criminal offense.'" Id. (quoting Arizona v. Johnson, 555 U.S. 323, 326–27 (2009)).

This standard requires more than a "hunch" to justify an investigatory stop. Terry v. Ohio, 392 U.S. at 27. It demands "specific and articulable facts

9

which, taken together with rational inferences from those facts," id. at 21, provide detaining officers with a "particularized and objective basis for suspecting legal wrongdoing," United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). The reasonable-suspicion standard is "not high." Richards v. Wisconsin, 520 U.S. 385, 394 (1997). Certainly, it is less demanding than probable cause, "requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity 'may be afoot.'" United States v. Bailey, 743 F.3d at 332 (emphasis added) (quoting Terry, 392 U.S. at 30); see United States v. Arvizu, 534 U.S. at 273 (collecting cases); United States v. Padilla, 548 F.3d 179, 186–87 (2d Cir. 2008) (stating that reasonable suspicion requires "less than a fair probability of wrongdoing, and considerably less than . . . a preponderance of the evidence" (internal quotation marks omitted)). Thus, "conduct that is as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity." United States v. Padilla, 548 F.3d at 187 (internal quotation marks omitted); see Navarette v. California, 134 S. Ct. 1683, 1691 (2014).

An indication of possible illicit activity is properly informed by "commonsense judgments and inferences about human behavior." Illinois v.

Wardlow, 528 U.S. 119, 125 (2000). And while a reviewing court cannot merely defer to police officers' judgment in assessing reasonable suspicion, the court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene, whose insights are necessarily guided by his experience and training. See United States v. Bailey, 743 F.3d at 332; United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000).

B.    Singletary's Initial Stop Was Supported by Reasonable Suspicion

Applying these principles here, we must reject the district court's determination that Singletary's initial stop was unreasonable because it rested only on a "hunch" of criminal activity. See United States v. Singletary, 37 F. Supp. 3d at 605, 611. A hunch is an "'inchoate and unparticularized suspicion,'" Illinois v. Wardlow, 528 U.S. at 124 (quoting Terry v. Ohio, 392 U.S. at 27), i.e., a conclusion derived from intuition in the absence of articulable, objective facts. Here, however, the challenged stop did not depend on intuition or inchoate speculation. It was supported by numerous objective facts that, when considered in their totality, provided the requisite reasonable suspicion to think Singletary was violating Rochester's open-container ordinance, thereby warranting further investigation. See United States v. Arvizu, 534 U.S. at 274–75 (emphasizing that

11

"'totality of the circumstances' principle" governs determination of reasonable suspicion); accord United States v. Bailey, 743 F.3d at 335–36.

First, Officer Pfeffer observed Singletary walking down a public street carrying an object that was the "standard size of a beer" can. Hr'g Tr. at 13. In short, Singletary was plainly carrying not a bag of groceries, his laundry, or the trash, but what appeared to be a container frequently used for alcohol. To be sure, a standard beer can is similar in size to a soft drink can, but the law "does not demand that all possible innocent explanations be eliminated before conduct can be considered as part of the totality of circumstances supporting a reasonable basis to believe that criminal activity may be afoot." United States v. Bailey, 743 F.3d at 333; see Navarette v. California, 134 S. Ct. at 1691.

Second, Pfeffer saw that Singletary was carrying the beer-sized can wrapped in a brown paper bag. See Hr'g Tr. at 17. A reviewing court properly views this fact through the eyes of Officer Pfeffer, who knew from experience—not simply from intuition—that persons carrying open containers of alcohol in public frequently conceal that proscribed activity by covering the containers with brown paper bags. See id.; United States v. Bailey, 743 F.3d at 332; United States v. Bayless, 201 F.3d at 133. "[C]ommonsense judgments and inferences about

12

human behavior," <u>Illinois v. Wardlow</u>, 528 U.S. at 125, are consistent with this experience because persons drinking non-alcoholic beverages have little reason to conceal them in brown paper bags. Further, case law confirms the prevalence of the practice experienced by Pfeffer among persons violating open-container laws. <u>See, e.g.</u>, <u>United States v. Grote</u>, 629 F. Supp. 2d 1201, 1204 (E.D. Wash. 2009) (crediting officer's suspicion that bottle wrapped in brown paper located next to driver contained alcohol because "liquor stores typically put such bottles in brown paper bags"), <u>aff'd</u>, 408 F. App'x 90 (9th Cir. 2011) (mem. decision); <u>United States v. Pullen</u>, 884 F. Supp. 410, 411–12 (D. Kan. 1995) (identifying reasonable suspicion in case of bottle wrapped in brown paper on car seat), <u>aff'd</u>, 82 F.3d 427 (10th Cir. 1996) (unpublished table decision); <u>People v. Bothwell</u>, 261 A.D.2d 232, 234, 690 N.Y.S.2d 231, 234 (1st Dep't 1999) (identifying probable cause in case of bottle partially concealed by brown paper bag); <u>see also</u> <u>United States v. Ortiz</u>, No. 06-CR-6076, 2007 WL 925731, at *5 (W.D.N.Y. Mar. 26, 2007) (citing officer's knowledge "that paper bags were utilized to conceal the label on . . . alcoholic beverages" among facts supporting arrest for open-container violation); <u>United States v. McPhatter</u>, No. 03-CR-911 (FB), 2004 WL 350439, at *2 (E.D.N.Y. Feb. 24, 2004) (citing fact that bottle was "covered by a paper bag"

13

among reasons for crediting officer's suspicion that it contained beer); cf. Peterec v. City of N.Y., No. 14-CV-309 (RJS), 2015 WL 1027367, at *3 (S.D.N.Y. Mar. 6, 2015) (concluding that officer's suspicion of open-container violation based on defendant carrying large can obscured by brown paper bag did not amount to probable cause because defendant voluntarily showed officer can of iced tea). Thus, as the Seventh Circuit has observed, "[i]t is not hard to imagine facts that could lead an officer to reasonably suspect that [a beer-can-sized container in] a brown bag in fact contained open alcohol." Johnson v. United States, 604 F.3d 1016, 1022 (7th Cir. 2010) (remanding for factual development of issue). There is no need to "imagine" such facts in this case. The record provides them.

Third, Pfeffer saw that Singletary was carrying the brown-bagged beer-can-sized object in a "very steady" manner, as if he "did not want it to spill." Hr'g Tr. at 17. The "commonsense judgments and inferences about human behavior" to be drawn from such carrying, Illinois v. Wardlow, 528 U.S. at 125, provide reasonable suspicion to think the container was open and contained liquid. In urging otherwise, Singletary emphasizes that the officers did not see him actually drinking from the bag-covered can, nor did they directly observe him engage in activity proscribed by law. Neither argument persuades.

14

To be sure, the inference that Singletary was carrying an open container would be stronger still—indeed, virtually certain—if the officers had seen him drink from the bag-wrapped can. But reasonable suspicion does not demand certainty, or even probability. It requires only "specific and articulable facts" admitting a "rational inference[]." Terry v. Ohio, 392 U.S. at 21. The rational inference of openness to be drawn from the cautious manner in which Singletary was carrying the bag-wrapped can finds support not only in common sense, but also in actual experience as reflected in case law. See, e.g., United States v. Pullen, 884 F. Supp. at 411–12 (concluding that officer reasonably suspected that bottle wrapped in brown paper on car seat was open because bottle "looked as if it had been carefully placed on the driver's seat and leaned against the back rest so as to prevent spilling"); People v. Bothwell, 261 A.D.2d at 234, 690 N.Y.S.2d at 234 (rejecting lower court's holding that defendant could not be arrested for open-container violation where officer had not seen him drink from bottle partially concealed by brown paper bag and concluding that "the manner in which defendant held [the bottle] in front of him while engaged in conversation" was sufficient to suggest that it "was not empty"). Thus, we reject the idea that

15

reasonable suspicion of an open-container violation necessarily requires an observation of someone drinking from the container at issue.

Nor does reasonable suspicion demand actual observation of a person engaged in prohibited conduct. This is evident from precedent recognizing that reasonable suspicion can arise even where a defendant's conduct is as consistent with innocence as with guilt so long as there is "some indication of possible illicit activity." United States v. Padilla, 548 F.3d at 187 (internal quotation marks omitted). Indeed, if officers had observed actual prohibited conduct, they would have had probable cause to arrest. It is precisely because reasonable suspicion is based on something less that it approves only a brief investigatory stop.

Here, we conclude that the trio of "specific and articulable facts" just discussed, when "taken together with rational inferences" drawn therefrom, provided the detaining officers with a sufficient particularized and objective basis to suspect that criminal activity—in the form of an open-container violation—was afoot. See Terry v. Ohio, 392 U.S. at 21, 30. In such circumstances, it was constitutionally reasonable for the officers briefly to detain

16

Singletary in order "to confirm or dispel their suspicions." United States v. Sharpe, 470 U.S. 675, 686 (1985); see United States v. Bailey, 743 F.3d at 336.[6]

Singletary submits that, even if the stop was supported by reasonable suspicion, Officer Masucci was not authorized by New York law to effect detentions unrelated to his probation or parole duties. We are skeptical. New York law authorizes a probation officer to arrest any individual who commits an offense in the officer's presence, see N.Y. Crim. Proc. Law §§ 2.10(24), 140.25(3)(a), and, thus, might well allow a probation officer to conduct a brief investigatory stop when he has reasonable suspicion to think that an offense is being committed in his presence. In any event, Masucci was not acting on his own in stopping Singletary, but on the orders of and together with a police officer whose detention authority Singletary does not, and cannot, question. We

[6] The circumstances here are distinguishable from those that our sister circuits have deemed insufficient to give rise to reasonable suspicion of an open-container violation. See United States v. Williams, 615 F.3d 657, 667–68 (6th Cir. 2010) (holding that reasonable suspicion of open-container violations by some members of group of people on sidewalk insufficient for reasonable suspicion of such violations by other persons in group who were not observed with beverage containers); United States v. Jones, 584 F.3d 1083, 1086–87 (D.C. Cir. 2009) (holding that officers lacked reasonable suspicion to stop individual walking on sidewalk carrying large Styrofoam cup in one hand and brown bag under arm in vicinity of 15–20 other persons having street party). Here, by contrast, Singletary was himself seen cautiously carrying a beer-sized can wrapped in brown paper.

need not pursue this point further, however, because constitutional reasonableness does not demand that a seizure comport with <u>state</u> procedural law, and Singletary fails to show how Masucci's involvement implicates constitutional concerns.  <u>See</u> <u>Virginia v. Moore</u>, 553 U.S. 164 (2003); <u>Whren v. United States</u>, 517 U.S. 806 (1996); <u>accord</u> <u>United States v. Bernacet</u>, 724 F.3d 269, 277 (2d Cir. 2013) ("Read together, <u>Moore</u> and <u>Whren</u> stand for the proposition that the Fourth Amendment does not generally incorporate local statutory or regulatory restrictions on seizures and that the violation of such restrictions will not generally affect the constitutionality of a seizure" that is otherwise constitutionally reasonable. (internal quotation marks omitted)).

Accordingly, we identify no Fourth Amendment violation in the challenged stop and, therefore, reverse the order suppressing items seized from Singletary incident to his ensuing arrest.

## III.   Conclusion

To summarize, we conclude as a matter of law that the officers' observations of Singletary walking down a public street, carrying a beer-sized can wrapped in a brown paper bag, which object he held in a cautious manner so as to avoid spillage, are articulable, objective facts that together provided

reasonable suspicion to support a brief stop to investigate whether Singletary was then violating a local open-container ordinance. Accordingly, Singletary's ensuing arrest and the seizure of contraband incident thereto were not tainted by an unlawful stop warranting suppression of the seized items. We therefore REVERSE the district court's suppression order and REMAND this case for further proceedings consistent with this opinion.