UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of February, two thousand and eighteen.

Present:
> BARRINGTON D. PARKER,
> PETER W. HALL,
> RAYMOND J. LOHIER, JR.
> *Circuit Judges.*

---

United States of America,

> *Appellee,*

v.                                                                     17-65-cr

Shawn Lewis,

> *Defendant,*

Jerry Frith,

> *Defendant-Appellant.*

---

| | |
|---|---|
| *For Appellant*: | Marsha R. Taubenhaus, Law Offices of Marsha R. Taubenhaus, New York, NY. |
| *For Appellee:* | Elizabeth A. Hanft, Shane T. Stansbury, Assistant United States Attorneys, *for* Geoffrey S. Berman, United States |

1

Attorney for the Southern District of New York, New York, NY.

Appeal from a final judgment entered December 14, 2016, and decision entered November 8, 2016, in the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment and decision are **AFFIRMED**.

Jerry Frith appeals from the eighteen-month term of imprisonment and five-year term of supervised release imposed by the United States District Court for the Southern District of New York (Rakoff, *J.*) following revocation of his term of supervised release. Specifically, he asserts that the district court erred by not excluding evidence of drugs found in a rental car following a search of that car that violated his Fourth Amendment rights. We assume the parties' familiarity with the underlying facts, the procedural history, the arguments presented on appeal, and the district court's rulings, which we reference only to explain our decision.

We review for clear error a district court's factual findings on a challenged suppression order and we review *de novo* its resolution of questions of law and mixed questions of law and fact, including the existence of a reasonable suspicion. *See United States v. Singletary*, 798 F.3d 55, 59 (2d Cir. 2015). As an initial matter, we have yet to decide whether the exclusionary rule applies to supervised release revocation proceedings. We need not decide that issue in this case, however. For the

2

reasons stated below, even if the exclusionary rule applies to supervised release revocation proceedings, the prolonged traffic stop at issue in this appeal was conducted based on a reasonable suspicion that criminal activity was afoot and, therefore, was a constitutional seizure.

Frith asserts that Pennsylvania State Trooper Kent Ramirez unlawfully prolonged the traffic stop waiting for the arrival of the K-9 officer because Ramirez lacked a reasonable suspicion of criminal activity beyond the traffic violation. "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015). "[A] relatively brief encounter, a routine traffic stop is more analogous to a so-called *Terry* stop . . . than to a formal arrest." *Id.* (quotation marks omitted). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (citation omitted).

"An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop." *Id.* at 1615. "But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* The typical inquiries involved in a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* "Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id.* For that

reason, without independent reasonable suspicion of other crimes, an officer cannot prolong an otherwise lawful traffic stop beyond the time it takes to carry out the traffic stop's "typical inquiries." *See id.*

The reasonable suspicion standard is "not high" and is "less demanding than probable cause, 'requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity *may* be afoot.'" *Singletary*, 798 F.3d at 60 (quoting *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014)). "[C]onduct that is as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity." *Id.* (quotation marks omitted). "[W]hile a reviewing court cannot merely defer to police officers' judgment in assessing reasonable suspicion, the court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene, whose insights are necessarily guided by his experience and training." *Id.*

Here, Ramirez had a reasonable suspicion that criminal activity in addition to the traffic violation was afoot. The Enterprise rental car Frith was driving lacked the barcode typically found on Enterprise rentals. Ramirez also pointed to the presence of six air fresheners (and the strong odor they emitted), noting that, in his experience, the presence of air fresheners in rental cars is uncommon. Further, Frith and his passenger gave inconsistent information about their relationship, who they were traveling to visit, and how long the trip would last. Based on those observations, Ramirez's suspicion that criminal activity was afoot was reasonable and, as a result, his decision to prolong the stop beyond the time it took to process the traffic infraction

4

and continue investigating did not violate Frith's Fourth Amendment rights.  The

district court's decision not to suppress the evidence found as a result of that more

lengthy investigation was proper.[1]

   We have considered Frith's remaining arguments and find them to be without

merit.  Accordingly, the district court's judgment and decision are **AFFIRMED**.

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk

---

[1] As an additional reason for suppressing the evidence at issue, Frith asserts that the K-9 search of his belongings inside the car's trunk was without probable cause.  Frith failed, however, to raise this argument to the district court and has therefore waived it.  *See United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) (concluding that a defendant who "had ample opportunity to raise and develop" an argument in favor of suppression before the district court and who had "not provided, much less established, any reasonable excuse for his failure to do so" had "waived [his suppression] argument").