United States v. Bell

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of May, two thousand eighteen.

PRESENT:  JOHN M. WALKER, JR.,
          DENNIS JACOBS,
                         Circuit Judges,
          KATHERINE B. FORREST,
                         District Judge.*

- - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,
          Appellant,

          -v.-                                    17-2044

CHARLES BELL,

---

* Judge Katherine B. Forrest, of the United States District Court for the Southern District of New York, sitting by designation.

1

**Defendant-Appellee.**

- - - - - - - - - - - - - - - - -X

FOR APPELLANT:                          Paul D. Silver (Robert S. Levine, <u>on the brief</u>), Assistant United States Attorneys, <u>for</u> Grant C. Jaquith, Acting United States Attorney for the Northern District of New York, Albany, NY.

FOR APPELLEE:                          Melissa A. Tuohey, Assistant Federal Public Defender, <u>for</u> Lisa A. Peebles, Federal Public Defender, Office of the Federal Public Defender, Syracuse, NY.

Appeal from an order of the United States District Court for the Northern District of New York (Hurd, <u>J.</u>).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the order of the district court be **VACATED AND REMANDED**.

Appellant the United States of America brings this interlocutory appeal from a June 27, 2017 order of the district court suppressing a firearm seized, and statements made, after a <u>Terry</u> stop of Charles Bell.   <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).   The government argues that the district court erred because the officers possessed reasonable suspicion to stop Bell after he appeared to be engaging in illicit activity in a high crime area, and then fled from the officers, despite being ordered to stop.   We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures." U.S. Const. amend. IV. "[T]he ultimate measure of the constitutionality of a government search or seizure is reasonableness, a matter generally determined by balancing the particular need to search or seize against the privacy interests invaded by such action." United States v. Bailey, 743 F.3d 322, 331 (2d Cir. 2014) (internal quotation marks and citations omitted). As explained by the Supreme Court, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).

Reasonable suspicion to conduct a Terry stop exists when a law enforcement officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21. "While the officer may not rely on an inchoate and unparticularized suspicion or hunch, he is entitled to draw on his own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person." United States v. Padilla, 548 F.3d 179, 187 (2d Cir. 2008) (internal quotation marks omitted). "Even conduct that is as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity" because "Terry recognized that a series of acts, each of them perhaps innocent in itself, can when taken together warrant further investigation." Id. (internal citation and quotation marks omitted) Thus the reasonable suspicion "needed to justify the encounter is less than a fair probability of wrongdoing, and considerably less than proof of wrongdoing by a preponderance of the evidence." Id. (internal quotation marks omitted); see also Bailey, 743 F.3d at 332 ("The circumstances necessary to justify a Terry stop are a reasonable basis to think that the person to be detained is committing or has committed a criminal offense." (internal quotation marks omitted)).

A court reviewing whether an officer possessed reasonable suspicion to conduct a Terry stop "must consider the totality of the circumstances surrounding the stop" and "evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000) (internal citations and quotation marks omitted). "On review of a challenged suppression order, we

examine the district court's findings of fact for clear error, while applying de novo review to its resolution of questions of law and mixed questions of law and fact, such as the existence of reasonable suspicion to stop." United States v. Singletary, 798 F.3d 55, 59 (2d Cir. 2015).

Looking at the totality of the circumstances surrounding Bell's seizure through the eyes of a reasonable officer, the officials possessed reasonable suspicion to conduct a Terry stop. See Bayless, 201 F.3d at 133. The two detectives and a Deputy U.S. Marshal watched Bell approach a vehicle illegally stopped in the middle of the road in an area known for narcotics trafficking. Bell reached inside of the car and directed the driver to a side road, where the driver exited the vehicle and he and Bell appeared to be inspecting something. Based on their experience, the officers believed they were witnessing a drug transaction. When an officer then got out of the unmarked police car and approached Bell, Bell turned and spotted the detective, who was wearing a vest with the word "Police" on it, and Bell began to walk away. The detective then ordered Bell to stop, but Bell fled.

"[T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a Terry analysis." Wardlow, 528 U.S. at 124. "Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion . . . Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Id. (internal citations omitted). Presence in a high crime area or flight from the police alone may not create reasonable suspicion; but "[w]hen the noticed presence of officers provokes a suspect's headlong flight in a high crime area, the officers are justified in suspecting criminal activity on the part of the suspect and a Terry stop is warranted." United States v. Muhammad, 463 F.3d 115, 121 (2d Cir. 2006); see also Wardlow, 528 U.S. at 124 ("[I]t was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police."). Therefore, based on the totality of the circumstances, the officers possessed reasonable suspicion to conduct a Terry stop of Bell.

4

Bell's arguments to the contrary are meritless. Bell argues that the stop was not justified at its inception because the police observed no criminal activity; but as noted, "conduct that is as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity." Padilla, 548 F.3d at 187. Although (as Bell argues) generic actions in a high crime area are not per se suspicious activities, fleeing from officers in an area known for narcotics trafficking, while engaging in behavior that seems to a reasonable officer to be consistent with engaging in a narcotics transaction, provides reasonable suspicion for a Terry stop. See Muhammad, 463 F.3d at 121. Finally, while Bell argues he did not see the word "POLICE" on the detective's vest, the question is whether a reasonable officer believed Bell had seen the word "Police" emblazoned on the vest. See Bayless, 201 F.3d at 133.

Accordingly, the order of the district court is **VACATED**, and the case is **REMANDED** for further proceedings.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK