104 F.3d 350
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee
v.
Francis GRATTA, Defendant-Appellant
 No. 96-1133.
 United States Court of Appeals, Second Circuit.
 Sept. 19, 1996.
 
 Appearing for Appellee: Peter S. Jongbloed, (Assistant U.S. Attorney, D. Conn., New Haven, Connecticut)
 Appearing for Appellant: Andrew B. Bowman (Westport, CT)
 D.Conn.
 AFFIRMED.
 Before OAKES and CALABRESI, Circuit Judges, and CONNER, District Judge.*
 ORDER
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the District of Connecticut (Nevas, J.), it is hereby
 
 
 1
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 2
 Francis Gratta appeals from a judgment and order entered on February 21, 1996 in the United States District Court for the District of Connecticut (Nevas, J.), revoking his supervised release and imposing a nine-month sentence solely for the violation of a condition of that release. Gratta claims on appeal that the district judge erred in (1) denying his motion to suppress evidence and (2) not allowing him to cross-examine a government informant. We affirm the district court.
 
 
 3
 On May 18, 1992, Francis Gratta was sentenced to a term of imprisonment of 12 months to be followed by 36 months of supervised release after pleading guilty to participating in a bookmaking operation in violation of 18 U.S.C. §§ 2, 1955. Gratta's term of supervised release, which began on June 4, 1993, included a condition that he would not commit another federal, state, or local crime while under the court's supervision.
 
 
 4
 In 1993, Special Agent Donald Brutnell of the FBI began to receive information from a confidential informant regarding Gratta's violation of state gambling laws. Conn. Gen.Stat. §§ 53-278b(b), 53-278c(d). Specifically, the informant stated that Gratta owned a restaurant called the Corner Lunch in which he maintained two illegal video gambling machines. The informant said that the machines were located near the restroom of the restaurant.
 
 
 5
 Based on this information, Detective Gino Sternberg of the Connecticut State Police patronized the Corner Lunch on January 26, 1995. He ordered food and then went into the restroom, which was open to the public. Upon entering the restroom, Sternberg saw a second door on the opposite wall that was open. Beyond the open door was a hallway. The parties do not contest that this hallway was private. Sternberg alleges that because the restroom was of the one-room/no-stall variety, he attempted to close the second door for privacy. In order to reach the knob of that door, he had to step into the hallway with one foot. While doing so, he saw two video machines in the hallway. Sternberg states that he did not walk into the hallway at any time.
 
 
 6
 On February 1, 1995, Sternberg returned to confirm the presence of the machines. He came back later that day with other agents to confiscate the machines, which were indeed illegal. He then arrested the defendant. Sternberg did not have a warrant on any of these three occasions, but contends that on the last occasion he entered the hallway with the consent of an employee.
 
 
 7
 On October 5, 1995, the Probation Office filed a petition alleging that Gratta had violated a term of his supervised release and requesting that his supervised release be revoked. On October 25, 1995, Gratta moved to suppress the evidence regarding the machines and to dismiss the revocation petition. On January 16, 1996, the court denied the motion. On February 21, 1996, the court entered a judgment and order revoking the defendant's supervised release and imposing a nine-month sentence. This appeal ensued.
 
 
 8
 Gratta first contends that evidence relating to the machines was gathered in violation of the Fourth Amendment, and that the district court erred in not granting the motion to suppress it.** The district court's findings of fact in determining a suppression motion must be construed in the light most favorable to the government and cannot be reversed except for clear error. United States v. Kirsh, 54 F.3d 1062, 1067 (2d Cir.), cert. denied, 116 S.Ct. 330 (1995). The court's conclusions of law are reviewed de novo. United States v. Thompson, 29 F.3d 62, 65 (2d Cir.1994). A defendant's violation of supervised release must be established by a preponderance of the evidence. United States v. Meeks, 25 F.3d 1117, 1123 (2d Cir.1994).
 
 
 9
 Much of the evidence obtained from Sternberg's visits may have violated the Fourth Amendment. But since the district court expressly stated that the only evidence on which it relied was Sternberg's statement that he ascertained the presence of the machines on his first visit, we must restrict our inquiry to this evidence. We need not consider Gratta's Fourth Amendment claims regarding (a) Sternberg's statement that he confirmed the illegality of the machines on his first visit, or (b) the evidence obtained during his second and third visits. This is so because none of the evidence on which the court relied derived from these events.
 
 
 10
 The court determined that the evidence with respect to the presence of the machines was not illegally obtained because it was not acquired pursuant to a search. It noted that in Maryland v. Macon, 472 U.S. 463, 469 (1985), the Supreme Court held that a person does not have a reasonable expectation of privacy in an area of a store "where the public was invited to enter." The court noted that the restroom was a public area, and that Sternberg observed the video machines while behaving in a normally expected fashion--i.e. closing the door to that public area in order to ensure his privacy. The district court thus held that what one sees in maintaining one's privacy in a public toilet is not reasonably expected to be private.
 
 
 11
 On appeal, Gratta argues that Sternberg intended from the beginning to search the premises rather than to use the restroom. But if Sternberg did not intrude on an area in which the defendant had a reasonable expectation of privacy, his intent is irrelevant. The district court did not err in denying the motion to suppress.
 
 
 12
 To the evidence about the presence of the machines, the district court added the testimony of Agent Brutnell reporting on the statements of the informant. Gratta argues that the trial court's refusal to allow him to cross-examine the informant violated Federal Rule of Criminal Procedure 32.1(a)(2)(D), the Due Process Clause, and the Sixth Amendment.
 
 
 13
 Rule 32.1(a)(2)(D) requires that a defendant in a revocation proceeding be allowed to interrogate witnesses against him. However, that rule does not confer on a defendant "an absolute right to question adverse witnesses." United States v. Bender, 33 F.3d 20, 20-21 (8th Cir.1994). The court in a revocation hearing must balance the defendant's right to confront against the government's grounds for not permitting confrontation. United States v. Zentgraf, 20 F.3d 906, 909 (8th Cir.1994). In determining whether the government's grounds are sufficient, the court must first consider the explanation given by the government as to why confrontation is undesirable and must then consider the reliability of the evidence that the government offers. United States v. Bell, 785 F.2d 640, 643 (8th Cir.1986).
 
 
 14
 In this case, the district court found that the government's grounds for not permitting confrontation outweighed the defendant's right to confront. The district court noted that the government had argued that the informant's identity should not be revealed because (1) the informant feared for his and his relatives' safety and (2) following confrontation, the informant would no longer be able to give information to the government about organized crime in Connecticut. The court further found the evidence to be reliable because the informant had given accurate information in other criminal investigations, and because his information in this case, insofar as it had been checked, was also accurate.
 
 
 15
 The defendant contends on appeal that the court erred because the government presented no more than a generalized fear for the informant's safety and because the information was not reliable. We find the informant's plausible grounds for fear, the unrefuted statement that the informant would become unusable after confrontation, and the testimony regarding the informant's reliability in this and other investigations, to be enough, in a revocation hearing, to allow a court to deny a defendant the opportunity to confront an informant under Rule 32.1.
 
 
 16
 The Due Process Clause requires that a final revocation of a supervised release must be preceded by an opportunity to cross-examine adverse witnesses unless the hearing body specifically finds good cause for not allowing confrontation. Black v. Romano, 471 U.S. 606, 611-12 (1985). The district court found that good cause existed in this case. Moreover, the right to confront witnesses under the Sixth Amendment has generally been held not to extend to the confrontation of government informants. Cf. McCray v. Illinois, 386 U.S. 300, 313-314 (1967). Thus, the district court did not err in dismissing defendant's constitutional claims.
 
 
 17
 The remaining, and crucial, question that this case presents is one that the defendant does not specifically argue, but which we will nonetheless consider. Did the district judge err in finding that the evidence of the machines' presence obtained from the first search and Agent Brutnell's report about the informant's statements, when combined, proved by a preponderance of the evidence that Gratta had violated a term of his supervised release? We hold the judge did not err in so finding. We make no suggestion as to whether this would still be the case if the sentence were disproportionately severe, cf. United States v. Gigante, 1996 WL 479499, * 3 (2d Cir.1996), let alone if the applicable standard required a finding of guilt beyond a reasonable doubt.
 
 
 18
 Our holding does not reflect a wish to condone the alleged behavior of the state police in seeking to find evidence in a manner that seems on its face to be completely unjustified. We particularly make note of this because the state police carried out their investigation as a result of evidence given by an informant to federal officers who were, apparently, intimately acquainted with the case. Our concern is thus not only constitutional rights but also the possible behavior of federal officers. Nevertheless, since such behavior did not affect the evidence considered by the district court or its sufficiency, our reservations do not affect our holding.
 
 
 19
 We have examined all of the defendant's contentions, and find them to be without merit. The district court's judgment is therefore affirmed.
 
 
 
 *
 The Honorable William C. Connor, Senior District Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 **
 This circuit has held that the exclusionary rule applies to revocation proceedings if the person conducting the search knows of the defendant's probationary or supervised status. United States v. Rae, 678 F.2d 382, 388-90 (2d Cir.1982). In this, we differ from the Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits, which have held that the exclusionary rule does not apply to parole, probation, or supervised release hearings. United States v. Gravina, 906 F.Supp. 50, 53 (D.Mass.1995) (citing United States v. Finney, 897 F.2d 1047, 1048 n. 3 (10th Cir.1990) (collecting cases))