18-2238-cr
*United States v. Hightower*

# United States Court of Appeals
# For the Second Circuit

August Term 2019

Argued: October 23, 2019
Decided: February 6, 2020

Docket No. 18-2238

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

RANDY HIGHTOWER,

*Defendant-Appellant*.

Before:      KEARSE, PARKER, AND SULLIVAN, *Circuit Judges*.

Defendant-Appellant Randy Hightower appeals from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*) revoking his term of supervised release after finding by a preponderance of the evidence that he had violated the conditions of his supervised release by committing a state crime. Because we conclude that the exclusionary rule does not apply in revocation proceedings, we affirm the judgment of the district court.

AFFIRMED.

MEREDITH S. HELLER, Law Offices of Meredith S. Heller, PLLC, New York, New York, *for Defendant-Appellant.*

JUSTIN V. RODRIGUEZ, Assistant United States Attorney (Anna M. Skotko, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York, *for Appellee.*

PER CURIAM.

In April 2009, the United States District Court for the Southern District of New York (Rakoff, *J.*) sentenced Defendant-Appellant Randy Hightower principally to 110 months' imprisonment and two years of supervised release following his conviction for being a felon in possession of a firearm. The mandatory conditions of his supervised release included the requirement that he not commit another federal, state, or local crime. On October 3, 2017, the U.S. Probation Office provided the district court with an amended violation report, charging Defendant with violating the terms of his release by (1) possessing a loaded firearm in violation of N.Y. Penal Law § 265.03(3) and (2) committing rape in violation of N.Y. Penal Law § 130.35(2). At an October 16, 2017 conference, Hightower denied the specifications of violation. By February 2018, the state

2

charges had been dismissed, though the parties expected that the gun offense would be re-charged. Nevertheless, in April 2018, the district court proceeded to an evidentiary hearing on the alleged violations.

During the hearing, the government called two law enforcement officer witnesses and introduced a corroborating video to show that, on October 2, 2017, NYPD Detective Bennett Shelley and three other plain clothes police officers were on patrol in an unmarked car when they saw Hightower walking through Macombs Dam Park, which was closed at the time. After following him for a short distance, the officers ultimately pulled Hightower over and asked him to remove his hand from his pocket. Although Hightower initially complied, he subsequently put his left hand back in his pocket and refused to comply with an order to remove it again. The officers then got out of the car and frisked him, whereupon they recovered a firearm from Hightower's pocket and arrested him.

Following the hearing, the district court concluded that the evidence was sufficient to prove the violation by a preponderance of the evidence, and that the only question was "whether the evidence confirming th[e] violation" – the recovered firearm – was in fact admissible. The district court explained that if the stop were not based on reasonable suspicion, then the gun would technically be

3

the fruit of an unlawful stop. Nevertheless, the court did not ultimately determine whether there had been reasonable suspicion for the officers to stop Hightower since the court concluded that the exclusionary rule does not apply in revocation of supervised release proceedings.

In support of this conclusion, the district court cited the Supreme Court's decision in *Pennsylvania Board of Probation and Parole v. Scott*, which held that the exclusionary rule does not apply in state parole revocation proceedings. 524 U.S. 357, 369 (1998). The district court also relied on our holding in *United States v. Jones* that "the constitutional guarantees governing revocation of supervised release are identical to those applicable to revocation of parole or probation." 299 F.3d 103, 109 (2d Cir. 2002). The district court determined that, in light of this binding precedent, the exclusionary rule does not apply in revocation of supervised release proceedings.

Based on this legal ruling, the district court concluded that the government had proved the firearm violation by a preponderance of the evidence. The district court therefore revoked Hightower's term of supervised release and sentenced him to one year and one day's imprisonment on the violation. Hightower timely appealed.

As the district court noted below, the exclusionary rule is a judicially-created mechanism of safeguarding against unreasonable searches and seizures – violations of the Fourth Amendment – primarily through its deterrent effect. *See United States v. Leon*, 468 U.S. 897, 906 (1984) (citing *United States v. Calandra*, 414 U.S 338, 348, 354 (1974)). But the Fourth Amendment does not itself guarantee that evidence unconstitutionally obtained will be withheld from criminal proceedings. *See id.* ("The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure works no new Fourth Amendment wrong." (brackets, internal quotation marks, and citation omitted)). "[B]ecause the rule is prudential rather than constitutionally mandated, . . . [it is] applicable only where its deterrence benefits outweigh its substantial social costs." *Scott*, 524 U.S. at 363 (internal quotation marks and citation omitted).

Therefore, the exclusionary rule does not apply in a number of contexts. In *Calandra*, the Supreme Court concluded that the rule does not apply in grand jury proceedings because "this extension of the exclusionary rule would seriously impede the grand jury." 414 U.S. at 349. The Court noted that "[b]ecause the

5

grand jury does not finally adjudicate guilt or innocence, it has traditionally been allowed to pursue its investigative and accusatorial functions unimpeded by the evidentiary and procedural restrictions applicable to a criminal trial." *Id.* The exclusionary rule also does not apply in civil tax proceedings, *United States v. Janis*, 428 U.S. 433, 460 (1976), civil deportation proceedings, *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984), and federal habeas proceedings, *Stone v. Powell*, 428 U.S. 465, 494–95 (1976).[1]

As the district court observed, our precedent instructs the same conclusion in the context of revocation of supervised release proceedings. To be sure, we have previously held that the exclusionary rule applies in revocation of federal *probation* proceedings – the predecessor to the current supervised release scheme. *See United States v. Rea*, 678 F.2d 382, 390 (2d Cir. 1982); *see also United States v. Gratta*, 104 F.3d 350, 1996 WL 532655, at *2 n.** (2d Cir. 1996) ("This circuit has held that the exclusionary rule applies to revocation proceedings if the person conducting the search knows of the defendant's probationary or supervised status."). Nevertheless, while we of course recognize that generally "[a] decision of a panel

---

[1] Additionally, the rule does not require exclusion of evidence obtained in violation of the Fourth Amendment where the officer acted in good faith. *See Leon*, 468 U.S. at 920–22 (reasonable reliance on a warrant); *Illinois v. Krull*, 480 U.S. 340, 349–50 (1987) (reasonable reliance on a statute later deemed unconstitutional).

of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court," *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995), "[w]e have [also] recognized . . . that there is an exception to this general rule when an intervening Supreme Court decision . . . casts doubt on our controlling precedent," *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 154 (2d Cir. 2015) (internal quotation marks and citation omitted), *aff'd sub nom. Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018). In those circumstances, "the intervening decision need not address the precise issue already decided by our Court," so long as there is a "conflict, incompatibility, or inconsistency between this Circuit's precedent and the intervening Supreme Court decision." *Id.* at 154–55 (brackets, internal quotation marks, and citations omitted). Such is the case here.

Since *Rea* was decided in 1982, the Supreme Court has held that the exclusionary rule does not apply in state parole revocation proceedings. *See Scott*, 524 U.S. at 364. In *Scott*, the Court reasoned that "[a]pplication of the exclusionary rule would both hinder the functioning of state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings. . . . [while] provid[ing] only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant

7

deterrence of unconstitutional searches." *Id.* While the Supreme Court has not addressed the *exact* question before us today, *see United States v. Lewis*, 712 F. App'x 83, 83 (2d Cir. 2018), our modern case law makes clear that the state parole revocation proceedings described in *Scott* are the functional equivalent of the federal supervised release proceedings here, *see Jones*, 299 F.3d at 109. Indeed, we have previously held that "the constitutional guarantees governing revocation of supervised release are identical to those applicable to revocation of parole or probation." *Id.* This comparison creates a clear "incompatibility" between our holding in *Rea* and the Supreme Court's decision in *Scott*, and in turn, provides the basis for our conclusion that the exclusionary rule does not apply in revocation proceedings.

Federal supervised release is a flexible system created by Congress "to assist individuals in their transition to community life." *United States v. Johnson*, 529 U.S. 53, 59 (2000). District courts impose conditions on the term of supervised release in order to ensure that the needs of sentencing are met, which include the need to "protect the public from further crimes of the defendant." *United States v. Myers*, 426 F.3d 117, 124 (2d Cir. 2005) (quoting U.S. Sentencing Guidelines § 5D1.3(b)). In light of these considerations, we have previously recognized that "revocation

8

proceedings [do not have] the full range of procedural safeguards associated with a criminal trial because a probationer already stands convicted of a crime." *Jones*, 299 F.3d at 109 (citation omitted); *see also United States v. Carthen*, 681 F.3d 94, 99 (2d Cir. 2012) ("Revocation proceedings are not deemed part of a criminal prosecution, and, therefore, defendants in such proceedings are not entitled to the full panoply of rights that criminal defendants generally enjoy." (internal quotation marks and citation omitted)). For instance, the government need only prove a violation of the conditions of supervised release by a preponderance of the evidence, rather than beyond a reasonable doubt. 18 U.S.C. § 3583(e)(3). In addition, the Federal Rules of Evidence do not apply. Fed. R. Evid. 1101(d)(3).

The supervised release system therefore already functions without the same procedures as a criminal trial, and application of the exclusionary rule would impose procedural costs not contemplated by the system, as the Supreme Court observed under similar circumstances in *Scott*. *See* 524 U.S. at 365–66. Moreover, the "rule would provide only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches." *Id.* at 364. Since the deterrent value does not outweigh the costs, the exclusionary rule does not apply in the context of

9

revocation of federal supervised release proceedings.

This conclusion is consistent with the views of our sister circuits. For example, in *United States v. Hebert*, the Ninth Circuit concluded that "the [Supreme] Court's reasoning in *Scott* applies equally to suppression of evidence in federal supervised release proceedings." 201 F.3d 1103, 1104 (9th Cir. 2000). There, the Ninth Circuit recognized that the reasoning in *Scott* abrogated its precedent and foreclosed a potential exception when an officer knows that a suspect is on supervised release, which the Ninth Circuit had contemplated prior to *Scott*. *See id.* at 1104 n.2. Similarly, the Fourth Circuit in *United States v. Armstrong*, held that "the reasoning of *Scott* applies equally to supervised release revocation proceedings as to parole revocation proceedings, and to federal proceedings as to state proceedings," before concluding that "*Scott* requires that the exclusionary rule not be extended to federal supervised release revocation proceedings." 187 F.3d 392, 394 (4th Cir. 1999). The Eighth Circuit has held the same. *See United States v. Charles*, 531 F.3d 637, 640 (8th Cir. 2008) ("Whether evidence was obtained in violation of the Fourth Amendment to revoke [the supervisee's] supervised release is immaterial as the exclusionary rule generally

10

does not apply in revocation of supervised release proceedings.").[2]  This conclusion is also consistent with post-*Scott* decisions of the district courts in this Circuit.  *See, e.g., United States v. Campbell*, 342 F. Supp. 3d 375, 386–87 (W.D.N.Y. 2018); *United States v. Spencer*, No. 06-cr-413 (DLI), 2016 WL 6781225, at *4 (E.D.N.Y. Nov. 15, 2016); *United States v. Medrano*, No. 08-cr-60 (WHP), 2012 WL 3055758, at *2 (S.D.N.Y. July 20, 2012).  Indeed, Hightower does not point to – nor can we locate – any case after *Scott* holding that the exclusionary rule applies in the context of a revocation of supervised release proceeding.

Put simply, the deterrent effects of the exclusionary rule are significantly outweighed by the costs involved in applying the rule in this context.  In light of the Supreme Court's decision in *Scott*, and our own decision in *Jones*, we hold that the exclusionary rule does not apply in revocation of federal supervised release proceedings.  We also conclude that Hightower's remaining argument – that the district court erred in refusing to give him access to grand jury minutes – is without

---

[2] Hightower argues that the Eighth Circuit has carved out an exception to this rule when there has been a showing of harassment by officers.  The case that most clearly states this proposition is an unpublished Eighth Circuit decision decided mere months after *Scott*, *see United States v. Archambeau*, 163 F.3d 603, 1998 WL 637015 (8th Cir. 1998), which itself relies on a Fifth Circuit decision pre-dating *Scott*, *see United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992).  We do not find this authority persuasive in light of *Jones*, and in any event, Hightower has not demonstrated police "harassment" here.

merit because he impermissibly seeks to attack his underlying conviction. *See United States v. Warren*, 335 F.3d 76, 78 (2d Cir. 2003). Accordingly, we AFFIRM the judgment of the district court.